## COOK, KERR & BARNARD, Respondents, v. K. S. PIATT, Appellant.

### Kansas City Court of Appeals, October 7, 1907.

1. **PLEADING: Petition: Partnership: Evidence.** The real functions of a petition are performed when the constitutive· facts are stated in a way to advise the defendant of the issues he is to prepare to meet and the averments of partnership between the plaintiffs and the sufficiency of the evidence to support the averment are sustained.

2. **CONTRACT: Sufficiency of Evidence.** Evidence held sufficient to show an agreement by defendant to pay the plaintiffs one dollar and fifty cents per acre to sell his land at a given price.

3. **PETITION: Evidence: Ownership: Real Estate Agents: Estoppel.** A. petition to recover commissions by real estate agents against their principal averred that the principal was owner of and had charge and control of certain lands. The evidence showed that he had an option thereon and that he subsequently consummated the contract made by his agents. *Held*, he cannot be heard to deny his liability for an agreed commission on the ground that the agent knew he was not the owner of the record title.

4. **REAL ESTATE BROKERS: Dual Agency: Option Owner: Real Owner: Scienter.** When the owner of an option contracts with real estate brokers to sell the optioned land at a given commission, knowing that the brokers at the same time represented the purchasers, the fact that the owner of the record title has no knowledge of the dual agency is wholly immaterial and cannot defeat the brokers' rights to their commissions.

5. ———: ———: **Fraud: Answer.** A principal sued by his brokers for commission cannot defeat the action by a claim of fraud growing out of the known dual agency of his brokers unless he pleads the same in his answer and shows it by a preponderance of the evidence and the brokers do not have to show their innocence.

6. ———. ———: **Right to Contract: Public Policy.** *Held, arguendo*, that the restricting parties in the transaction of their business from the employment of a dual agency of an experienced assistant, is nothing short of judicial paternalism and interferes with the right to contract and is invoking public policy in a matter in which the public has no sort of interest.

Appeal from Livingston Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

AFFIRMED.

*B. B. Gill & Son* and *J. M. Davis & Son* for appellant.

(1)   The allegation in plaintiff's petition of an employment "of W. P. Cook and G. B. Kerr to sell or exchange the same for him," does not amount to an allegation of the employment of said persons as a firm. Bank v. Campbell, 34 Mo. App. 48. There is no allegation in the petition that W. P. Cook and G. B. Kerr were partners at the time the alleged contract was entered into. Therefore, proof of a partnership did not sustain petition. Bank v. Campbell, supra. Evidence of the employment of W. P. Cook individually, did not sustain the allegations of the petition and was not a variance, but a failure of proof not cured by verdict. Bagnell Timber Co. v. Railroad, 180 Mo. 466, and cases cited; Vanhooser v. Dunlap, 117 Mo. App. 531; Meyers v. Railroad, 120 Mo. App. 288, 96 S. W. 739; Harper v. Fidler, 105 Mo. App. 689; Lemaster v. Railway, 99 S. W. 502. The court should have peremptorily instructed the jury to return a verdict for defendant on the first count of plaintiff's petition for the following reasons: (2)   Because there is no substantial evidence that defendant promised and agreed to pay plaintiffs $1.50 per acre for their services in effecting an exchange of the Chariton county lands.   (3)   Because the evidence disclosed that plaintiffs, in effecting the exchange, were acting as agents for A. D. Smith, the owner of the Kansas land, and that neither J. J. Piatt, J. R. Piatt, Mrs. Hutchinson, Mrs. Stevens, or Mrs. Floyd, who were the owners of or had any interest in the Chariton county lands, had any knowledge of plaintiffs' double agency. Myers v. Manchett, 59 Wis. 419, 43 Wis. 426; Carr v.

Ubsdell, 97 Mo. App. 332; Chapman v. Currie, 51 Mo. App. 40. (4) Because plaintiffs' evidence disclosed that plaintiffs were guilty of such fraudulent misconduct as will not be tolerated in a person assuming to act as the agent of both parties to an exchange of property. (5) Because plaintiffs failed to prove a constitutive fact alleged by them in their petition, i. e., that defendant "was the owner of the farm in Chariton county, Missouri, containing 519 acres. (6) Because plaintiff Cook testified and plaintiffs' evidence showed that plaintiffs concealed from J. J. Piatt, one of the parties to the contract, the fact of their double agency, or that any of the Piatts were to pay a commission, and plaintiffs' evidence showed that the contract attempted to be enforced was void because against public policy. Phelps v. Amenecke, 119 Mo. App. 143; Normon v. Roseman, 59 Mo. App. 686.

*F. Sheetz & Sons* and *Lewis A. Chapman* for respondents.

The question of a contract against public policy does not arise in this case. Plaintiffs were the agents of both Smith and appellant, and both Smith and appellant knew it, and both agreed to pay a commission. Harper v. Fidler, 105 Mo. App. 680; Mechem on Agency, sec. 67, p. 48; Collins v. Fowler, 8 Mo. App. 289; De Steiger v. Hollington, 17 Mo. App. 389; Robinson v. Jarvis, 25 Mo. App. 421.

JOHNSON, J.—Action by real estate brokers against their principal to recover a commission. Plaintiffs had judgment for the full amount claimed in their petition and defendant appealed. The petition is in two counts, but as the court instructed the jury to find for defendant on the second, we are concerned only with the cause of action pleaded in the first.

It is alleged in the petition that plaintiffs "are a

firm doing business in the city of Chillicothe, Missouri, under the name of Cook, Kerr & Barnard, and are engaged in buying and selling real estate as real estate agents.   That the defendant in the spring of 1904 was the owner of and had charge and control of a large farm in Chariton county, Missouri, containing five hundred and nineteen acres, and placed same in the charge of W. P. Cook and G. B. Kerr to sell or exchange the same for him at and for the sum of one hundred dollars per acre, and agreed to pay said Cook and Kerr the sum of one and 50-100 per acre, provided they would sell the same for cash at one hundred dollars per acre or make a satisfactory exchange thereof for other lands at the price of one hundred dollars per acre.   That said Cook & Kerr found a purchaser in one A. D. Smith of Harmony, Pawnee county, Kansas, and exchanged said farm of five hundred and nineteen acres aforesaid for the said defendant to the said A. D. Smith at the price of one hundred dollars per acre.   That after said contract was made with the defendant, between Cook & Kerr and him, the said Cook and Kerr formed a partnership with their co-plaintiff, A. L. Barnard, and he thereby became, was and now is interested in said contract with them."

In the answer, defendant, in addition to a general denial, alleges that "at the time in plaintiffs' petition mentioned and set out, one John J. Piatt, the father of this defendant, was the owner of two several tracts of land in Chariton county, Missouri, amounting to about 489 acres, and one J. R. Piatt, the defendant's brother, was the owner of a tract of land in Chariton county, Missouri, amounting to about thirty acres.   That the said John J. Piatt and J. R. Piatt, late in the year 1904, exchanged said several tracts of land with one A. D. Smith of Pawnee county, Kansas, for a tract of land in Kansas belonging to said Smith at said time. . . . That in negotiating for and making said exchange said W. P. Cook and G. B. Kerr were the agents of the said A.

D. Smith and represented said Smith as his agent in making said exchange. That the said A. D. Smith paid to plaintiffs herein the sum of one thousand five hundred dollars ($1,500) in full payment for their services as real estate agents in negotiating for and making such exchange. That neither this defendant nor the said John J. Piatt or J. R. Piatt, or the said A. D. Smith had any knowledge that the said plaintiffs, or either of them, were representing or acting as agents for or that they were claiming or pretending to act as agents for this defendant or that this defendant was expected to pay said plaintiffs, or either of them, any sum of money for making said exchange. . . . That for plaintiffs to act as the agent for any person in making said exchange other than A. D. Smith, without the knowledge of persons concerned in making such exchange would be a fraud upon the parties thereto."

Plaintiffs admit, in their reply, that they were the agents of Smith and were paid a commission by him for making the trade, but state that both the defendant and Smith knew of the dual employment and consented thereto.

It appears from the evidence introduced by plaintiffs that in 1904, plaintiffs Cook and Kerr were partners engaged in the business of real estate agents at Chillicothe. In March of that year, they were employed by A. D. Smith, who lived in Kansas, to sell or exchange for Missouri land a ranch of several thousand acres situated in Pawnee county, Kansas. Plaintiffs previously had been employed by defendant, who was a physician residing at Chillicothe, in another real estate transaction and plaintiff, Cook, solicited defendant to exchange a farm owned or controlled by the latter, for the Kansas land. Negotiations were opened which finally culminated in a proposal made by defendant that if plaintiffs would effect an exchange for the Kansas land of a farm of 519 acres in Chariton county, Missouri, on which de-

fendant stated he had an option at the price of one hundred dollars per acre, defendant would pay plaintiffs a commission of $1.50 per acre. It is not claimed by plaintiffs they understood defendant owned the farm in Chariton county, but they did understand from what he said that he had an option on it from the owners and could and would consummate an exchange for the Kansas land, if one could be made on satisfactory terms. Plaintiffs, in accepting employment from defendant disclosed to him that they had been employed by Smith and expected to receive a commission from each party if the lands were exchanged. They informed Smith of their employment by defendant and the evidence of plaintiffs is quite clear that both Smith and defendant consented to the dual employment. Efforts of plaintiffs resulted in bringing the parties together, in an inspection by Smith of the Missouri land, and by defendant of the Kansas land, and in the execution of a contract for an exchange of the properties wherein the value of the Missouri land was fixed at one hundred dollars per acre. The trade was finally consummated by an exchange of deeds.

When defendant went with plaintiff Cook to inspect the Kansas land, he was accompanied by his father and brother-in-law. Of the Missouri land, thirty acres belonged to the brother of defendant, 278 acres to his father and 211 acres had descended from his mother to five children, of whom defendant was one, but before the transaction in controversy, defendant had conveyed his interest to his father. Explanatory of the purpose of the visit of his father and brother-in-law to the Kansas land, defendant told Mr. Cook (so the latter says), "that he (defendant) had an option on the Chariton county land at $40.00 an acre and they (the father and brothed-in-law) were to decide whether they wanted their interest out there or he buy them out and take the whole thing himself."

On behalf of defendant, the employment of plaintiffs as his agent is vigorously denied. Defendant states that in what he did, he was acting merely as the representative of the owners of the Missouri land and that instead of agreeing to employ plaintiffs, it was expressly understood between him and Mr. Cook that plaintiffs were not to receive any commission from the Missouri parties. Other facts than those we have stated appear in the record but of these, some we deem of no importance to the questions we are called upon to determine and others will be noticed hereafter.

The first questions to receive our attention will be those relating to the contention of defendant that the learned trial judge erred in refusing his request for an instruction in the nature of a demurrer to the evidence. The sufficiency of the allegations of the petition to sustain the judgment is challenged on the ground that as there is no specific averment that plaintiffs Cook and Kerr were partners at the time of the alleged employment and that defendant contracted with them as a partnership, evidence of an agreement between defendant and plaintiffs as partners, or between defendant and plaintiff Cook, will not support the cause of action pleaded which is based on a contract made between defendant and Cook and Kerr, not as partners, but as joint contractors. In support of this argument, we are cited to Bank v. Campbell, 34 Mo. App. 45; Timber Co. v. Railroad, 180 Mo. l. c. 466; Van Hoosier v. Dunlap, 117 Mo. App. 529; Myers v. Railroad, 120 Mo. App. 288.

The only reasonable inference to be drawn from the evidence of plaintiffs is that while Cook personally made the agreement with defendant, it was the intention and purpose of both parties that the services of the partnership should be engaged. We do not find any variance between allegation and proof. In alleging the partnership, the petition does speak in the present tense, but we think a reasonable construction of this pleading, taken

as a whole, requires us to conclude that the pleader intended to state that the contract was made with plaintiffs as partners. The real functions of a petition are performed when constitutive facts are stated in a way to advise defendant of the issues he is to prepare to meet. Defendant would not be justified in placing a strained or hypercritical interpretation on the language employed and, as he must have known from reading the petition that he was called upon to meet the issue of having contracted with a partnership, he cannot claim to have been misled by the fact that the averment was worded somewhat awkwardly. We must rule this point against defendant.

Defendant says next that there is no evidence in the record tending to show he agreed to pay a stated amount as a commission. Mr. Cook testified: "Dr. Piatt said if he could get that 520 acres off at one hundred dollars an acre 'I will pay you the nicest commission you ever made.' I said 'what do you consider nice commission.' He said 'you know when you sold my eighty acres I told you I would see you got $1.50 an acre for every acre you handled after this' and he said 'I will give it.'" This certainly was explicit on the subject of the amount of the commission and sufficient to raise an issue of fact.

Further, it is urged that "plaintiffs failed to prove a constitutive fact alleged by them in their petition, viz., that defendant was the owner of the farm in Chariton county, Missouri, containing 519 acres." It was not required of plaintiffs to prove that defendant, at the time of the employment, was vested with the record title to the land. In alleging that defendant "was the owner of and had charge and control of a large farm in Chariton county, Missouri, containing 519 acres," etc., plaintiffs did not restrict the scope of their cause of action to one based on a contract made with the owner of the record title, but placed themselves in a position to show that their employment was by one who claimed only to

hold an option on the land. The unconditional employment of an agent carries with it the ample assurance that in the event he succeeds in negotiating a sale on the terms proposed, his principal will place himself in a position to make a good title. Certainly, a principal who represents to his agent at the time of the employment that he holds an option on the property and afterwards procures a consummation of the sale negotiated by the agent will not be heard to deny his liability for an agreed commission on the ground that the agent knew he was not the owner of the record title.

Another argument is that as it is conceded plaintiffs were also the agents of Smith and it appears that the owners of the Chariton county land (defendant's father, brothers and sisters) did not know of and, therefore, did not consent to, the dual employment of plaintiffs, a recovery will be precluded under the rule that an agent can not act for both parties to a transaction whose interests are hostile, except with the knowledge and consent of both parties. This contention must certainly spring from a misconception of the nature of the cause of action asserted by plaintiffs, as well as from a misunderstanding of the evidence adduced in support thereof. Plaintiffs do not claim to have had any contractual relation with the record owners of the Missouri land. They are not made parties to the suit and the cause asserted is founded on a contract made with defendant alone as the holder of an option on the property and not as the agent of the owners. If, as they insist, plaintiffs had no contract with the owners, then they owed no duty to the latter, and we know of no principle under which they were required to obtain the consent of strangers to their contract.

Finally, it is said, the fact was brought out in evidence that, in attempting to serve two masters, plaintiffs acted in bad faith toward both, in this: They at-

tempted to deceive defendant by procuring a letter from a banker in Larned, Kansas, of a tenor to enhance the value of the Kansas land in defendant's estimation, and deceived Mr. Smith by coaxing him into an agreement to take the Missouri land at one hundred dollars per acre, when, in fact, it was worth not much more than half that amount. We do not find any fact in the record nor do we find anything in the correspondence between plaintiffs and the Kansas banker which defendant offered in evidence, but which was excluded by the court, to sustain either charge of bad faith, but we prefer to place our ruling against this contention on the ground that the answer does not present any such issue of fraud. The only fraud charged therein is that plaintiffs were in the service of the other party to the transaction at the time they claimed they were employed by defendant. Plaintiffs replied to this by admitting the charge and justifying their dual employment on the ground that it was with the knowledge and consent of both parties to the transaction. Under the issues thus made, it did not devolve upon plaintiffs to show they acted in good faith toward each of their employers. That issue could be injected into the case only by defendant and, as he did not choose to raise it in the pleadings, he could not compel plaintiffs to meet it at the trial.

Cases of this character are no exception to the general rule that the burden of pleading and proving fraud is on him who holds the affirmative. We fail to perceive even a suggestion of legal or moral turpitude in the acceptance by the agent of employment from both parties to the transaction where both, with full knowledge of the facts, consent to the arrangement. To say, as some authorities have said, that such service is inimical to principles of public policy, would be to say that parties to any sort of business transaction have no right to enlist the services of a third person to aid them in the negotiation and closing of a trade, however neces-

sary and valuable the services of an experienced assistant might be to them. Such a pronouncement would be nothing short of an exercise of judicial paternalism, since it would deny to the individual the right to contract as he would concerning his own affairs in which the general public has no sort of interest. Public policy too often is invoked in aid of rules devoid of logical foundation.

No error was committed by the trial court in refusing to go into an issue not made by the pleadings. The demurrer to the evidence was properly overruled. What has been said sufficiently answers other points made by defendant.

The judgment is affirmed. All concur.