R. M. KEENEY AND HENRY J. TOELLE, DOING BUSINESS AS KEENEY-TOELLE REALTY COMPANY, RESPONDENTS, v. IRWIN FREEMAN, APPELLANT.—151 S. W. (2d) 532.

St. Louis Court of Appeals. Opinion filed June 3, 1941.

*A. Lowell Morris* for appellant.

*David F. Monahan* and *Rudolph K. Schurr* for respondents.

McCULLEN, J.—This suit was instituted in a justice of the peace court in the City of St. Louis by respondents, as plaintiffs, against appellant, as defendant, to recover the amount of a commission alleged to be due plaintiffs under a contract for the sale of real estate. A judgment for plaintiffs was rendered and defendant appealed to the Circuit Court of the City of St. Louis where a trial before the

court and a jury resulted in a verdict and judgment in favor of plaintiffs in the sum of $225. Defendant duly appealed to this court.

The case was tried on a statement filed by plaintiffs alleging the amount to be due under the contract sued on. No other pleadings were filed on behalf of either plaintiffs or defendant.

The evidence shows that plaintiffs were partners in the real estate business in the City of St. Louis; that defendant entered into a real estate contract with plaintiffs whereby plaintiffs were given a six months' exclusive agency to sell property located at 6338 Amelia Avenue in the City of St. Louis, being a lot forty feet by one hundred and fifteen feet, with a brick bungalow thereon. The contract was dated August 11, 1938. By its terms, defendant agreed that, in the event the said real estate was sold within six months from the date thereof, he would pay to plaintiffs five per cent on the gross amount of the sale up to and including $20,000.

The evidence shows without dispute that about the middle of December, 1938, and within six months after the contract was made, the property was sold to one Benjamin Harrison Matthews for the sum of $4500. The evidence further shows without dispute that plaintiffs advertised the property for sale, placed a for sale sign thereon, and took a number of parties out to the property and showed it to them in their efforts to sell it. Although they did not actually succeed in selling the property, they continued their efforts to sell it up until the time they learned that it had been sold to Mr. Matthews.

Defendant admitted that he signed the contract, which was introduced in evidence as plaintiffs' Exhibit A, after a former contract which had been signed by both him and his wife, Marjorie Freeman, concerning the same property had expired. The evidence shows that the former contract was in all respects as to its terms the same as the one upon which plaintiffs' suit is based but of a prior date. Defendant testified that the property described in the contract was in the name of Marjorie Freeman, his wife, on the date of the signing of the contract sued on herein; that it was never in his name. Defendant further testified that Mr. Matthews bought the property about two weeks after he had visited defendant at his home where he talked with defendant about purchasing it.

Mr. Matthews was called as a witness for defendant and was asked a number of questions to which the court sustained objections, whereupon defendants made the following offer of proof:

"The defendant offered to prove by the witness, duly sworn and on the stand, and who has identified himself as the purchaser of the property in question, that the stipulation and provision of the negotiations at the time of the transaction were, that, under no circumstances, would he be interested in a deal for the property if it were handled through the Keeney-Toelle Real Estate Company, or any other real estate company."

The court sustained plaintiffs' objections to such offered testimony and ruled it out.

Defendant offered testimony by Anthony P. Huebner, a brother-in-law of defendant (a brother of defendant's wife), but it was ruled out by the court on objection of plaintiffs. Defendant then made an offer of proof to the effect that the witness would testify that, due to an unpleasant experience the said witness had with plaintiffs in a real estate transaction, he had advisèd defendant's wife that she should not sign the contract (plaintiffs' Exhibit. A) ; and that thereafter the sister of the witness, acting under said advice, refused to enter into a contract or have any dealings with plaintiffs. Plaintiffs' objection to said offer of proof was sustained and the offered testimony was also ruled out by the court.

Defendant offered evidence to show that an effort was made by him to adjust by compromise the commission claimed by plaintiffs. His reasons for the offered compromise were, in substance, that there had been no great or extended effort by plaintiffs to sell the property, and that the property was purchased by the father of an adjacent neighbor.

Plaintiff Ralph M. Keeney, after testifying that he had taken a number of parties out to the property in an effort to sell it, stated that he learned that the property had been sold when defendant called at his office about the 18th or 19th of November, 1938, and told him that he had a deal on for the property; that shortly thereafter the witness told defendant that when he got ready to close the deal he, plaintiff, would be glad to look after his interests and take care of the deal in the regular manner; that defendant told him the papers were to be drawn by the Pine Lawn Bank because the folks who were buying the property were making a loan there and wanted to close the deal there; that the witness again told defendant that when he was ready to close the deal he, witness, would be glad to go out and see that everything was done right and asked defendant to notify him so that he could attend to it for him; that defendant never did call him or notify him; that later the witness saw in the Daily Record where the property had been transferred, whereupon he wrote defendant a letter requesting payment of the regular commission but that it was never paid.

At the close of all the evidence, the court gave, at the request of plaintiffs, an instruction telling the jury that under the law and the evidence their verdict must be in favor of plaintiffs and against defendant. In accordance with the instruction given by the court, the jury returned a verdict in favor of plaintiffs in the sum of $225.

Defendant contends that the court erred in refusing to permit consideration of the evidence by the jury because he says the evidence was conflicting and it was before the jury that the property was the property of Marjorie Freeman and not the defendant. In other words, as we understand this point, defendant contends that the court erred

in directing a verdict for plaintiffs because the evidence showed that the property in question was the property of Marjorie Freeman, defendant's wife, and not the property of defendant himself. We are of the opinion that such evidence as defendant adduced as well as his offers of proof constituted no defense to plaintiffs' cause of action under the facts shown in the record in this case. Defendant did not deny that he made the contract in question with plaintiffs but, on the contrary, admitted it. By the terms of the contract, which was in writing, defendant appointed plaintiffs "as my exclusive agent to sell the following real estate. . . ." Then followed a description of the property, after which the contract provided:

"In consideration of Keeney-Toelle Realty Co. advertising said property and endeavoring to sell the same, I agree to pay them a commission as follows:

"Sales within City Limits: 5% on gross amount of sale up to and including $20,000; . . .

"On the above price or such other price or valuation as I may accept, *if a sale or exchange of said property is made by any one while this* Agency is in force." (Italics ours.)

It is obvious that, in view of the above contract and the undisputed evidence in the record, defendant owed plaintiffs the commission sued for, and the fact that defendant's wife did not sign the contract constituted no defense for defendant who admitted he did sign it and thereby bound himself personally.

In a case involving the commission of an agent for the sale of property, it was held that,

"Even if defendant was not the owner of the farm, yet, if he contracted with plaintiff to effect a sale thereof and bound himself personally to pay for such services, defendant is liable." [Butler v. Moser (Mo. App.), 226 S. W. 990, 991.] [See also Cook, Kerr & Barnard v. Piatt, 126 Mo. App. 553, 104 S. W. 1131.]

It will be noted that plaintiffs' suit is based upon the contract in question and is not a suit for damages for breach thereof. The general rule is stated in 12 C. J. S. under the title "Brokers," page 220, as follows:

"An action on the contract is proper where the contract expressly provides for the payment of a commission to plaintiff on any sale whether made by plaintiff or defendant."

In the case at bar, by the terms of the contract defendant agreed to pay the commission "if a sale or exchange of said property is *made by any one* while this agency is in force." He is therefore liable on the contract because it is conceded that its terms were all complied with.

Defendant argues that one of the reasons for not having plaintiffs "draw the papers" for the sale to Matthews was that Matthews refused to permit any real estate company to act in the matter; that had there been any effort made by defendant to avoid plaintiffs' con-

tract, he, defendant, could have postponed the execution of the papers and thereby circumvanted plants' claim for their commission, but that instead he made efforts to "do the right thing" by plaintiffs by trying to compromise with them on their claim even before defendant entered into a discussion with the prospective purchaser. It is sufficient to say that neither such argument nor such evidence constitutes any defense to plaintiffs' plain and simple cause of action, and the court's rulings on defendant's offers of proof were correct.

Defendant further contends that plaintiffs could not recover on any theory of *quantum meruit* because the action was on an express contract. This point is not well taken because plaintiffs did not recover on the theory of *quantum meruit* but recovered on the contract in accordance with its express terms.

Defendant further points out that since 1897 a married woman has a right to contract as a *femme sole* in respect to any land or interest in land owned by her which came to her by gift, bequest or inheritance; that there is no evidence that defendant was acting with or under the authority of Marjorie Freeman as her agent or representative, therefore the contract relied upon, so far as a consideration is concerned to the plaintiffs, was based upon a mere contingency. We are unable to agree with defendant on this point. No deed was put in evidence by anyone to show who was the record owner of the property. Defendant merely stated that the property was in his wife's name only. Furthermore, as heretofore pointed out, it was not necessary for defendant to be the owner of the land to bind himself personally to pay. a commission in a contract such as the evidence shows he made with plaintiffs in this case.

In Cook, Kerr & Barnard v. Piatt, 126 Mo. App. 553, 104 S. W. 1131, it was held that the unconditional employment of an agent carries with it the ample assurance that, in the event he succeeds in negotiating a sale on the terms proposed, his principal will place himself in a position to make a good title. It was also further held in that case that a principal, who represented to his agent at the time of the employment that he held an option on the property and afterwards procured a consummation of a sale negotiated by the agent, would not be heard to deny his liability for an agreed commission on the ground that the agent knew he was not the owner of the record title. In the case at bar, defendant admits he procured a sale of the property to Matthews and cannot be heard to deny his liability for the commission, which he bound himself personally to pay, on the ground that the agent knew he was not the owner of the property.

In view of the whole record, we think the action of the trial court was proper. It was undisputed that defendant entered into the contract in question. The contract provided for an exclusive agency in plaintiffs; it also provided for a five per cent commission to be paid to them by defendant if a sale should be "made by any one" within the six months' period after the contract was made. It is conceded

that the property was sold within the six months' period for $4500. Hence the amount of the commission at five per cent was $225, which was the amount of the verdict. In view of such a record showing no substantial evidence to support any kind of a defense, there was nothing for the trial court to do but direct a verdict for plaintiffs. Had the court permitted the case to go to the jury, it would have been useless procedure for the reason that, if the jury by any chance had returned a verdict for defendant, it would have been the duty of the court promptly to set such verdict aside.

It has been held that where plaintiff's case as made by the pleadings and certain written evidence shows him to be entitled to judgment and there is nothing in the parol evidence having any tendency to show anything different, it is not error to direct a verdict for the plaintiff. [Wolff, Admx., v. Campbell, 110 Mo. 114, 19 S. W. 622.]

We think the case at bar, on the whole record, comes within the doctrine of the Wolff case, *supra*. [See also Central States Savings & Loan Assn. v. U. S. Fidelity & Guaranty Co., 334 Mo. 580, 66 S. W. (2d) 550, 552.]

We find no error in the record and the judgment is accordingly affirmed. *Hughes, P. J.*, and *Anderson, J.*, concur.