[1] We will refer generally to defendants and plaintiffs as below. Defendants have appealed.
[2] We do not know when this suit was begun, since there is no original petition in the transcript. An amended petition was filed October 4, 1946. To this, defendants filed an answer May 31, 1947. No reply appears in the transcript.
[3] The case was tried below without the intervention of a jury, and, on March 22, 1948, the trial court rendered a judgment in favor of plaintiffs in the sum of $1,100.00. Thereafter, defendants took the proper steps to appeal to this Court. The case has been briefed by both plaintiffs and defendants; but was not argued in this Court.
[4] Only one question is raised by defendants. They have cited the following cases and authorities, to-wit: 13 C.J. page 331, Section 179; 17 C.J.S., Contracts, § 100; 13 C.J. page 341, Section 192; 17 C.J.S., Contracts, § 101; 2 C.J. page 527, Section 151; 2 C.J.S., Agency, § 73; 2 C.J. page 531, Section 154; 2 C.J.S., Agency, § 75; 2 C.J. page 532, Section 156; 2 C.J.S., Agency, § 75; Burwell v. Lantz, 210 Mo. App. 51,240 S.W. 471; Kolb v. Bennett Land Co., 74 Miss. 567, 21 So. 233; Jayne v. Drake, Miss., 41 So. 372; Pepper v. West Plains Telephone Co., 224 Mo.App. 1055, 34 S.W.2d 540.
[5] As only one proposition is involved in defendants' appeal, we feel entirely safe in relying on defendants' (appellants') brief for the facts in the case. We quote from appellants' brief as follows:
[6] "This action was begun in the Circuit Court of Ozark County, Missouri, by the plaintiffs filing in said Court their petition setting out the fact that they were duly licensed real estate brokers; that the defendants had signed a contract authorizing the plaintiffs to sell a certain hotel in the city of Gainesville, which the defendants at that time owned and that for their commission in making said sale, the plaintiffs should be paid ten percent of the selling price.
[7] "The plaintiffs also alleged that the contract provided `that if the property described herein is sold, during the life of this agreement, to a purchaser procured through my own efforts, I will forthwith pay you one-half the amount of commission as provided in clause (c) above.'
[8] "The plaintiffs further alleged that on the 11th day of March, 1946, while the contract and agreement aforesaid was in full force and effect, and while the plaintiffs were endeavoring to sell the property aforesaid, the defendants sold said property for $22,000.00 and that the defendants refused to pay the commission in the sum of $1,100.00 which plaintiffs claimed. *Page 16 
[9] "The defendants answered admitting that the plaintiffs were duly licensed real estate brokers; admitting the execution of the contract; admitting that the plaintiffs were to be given one year in which to sell said property; admitting that by the contract, if the property was sold by defendants during the life of the contract, the plaintiffs were to receive five per cent of the selling price and setting up the fact that the contract was without consideration and that the agreement was revoked by the defendants by notifying the plaintiffs prior to the sale of the property covered under the agreement."
[10] There was an agreed statement of facts filed. In their answer to plaintiffs' amended petition, defendants admitted the facts alleged by plaintiffs in paragraphs I, II, III and IV, of said amended petition. Those allegations were also set out in the agreed statement of facts. In their answer, defendants denied all other allegations of said amended petition.
[11] The agreed statement of facts referred to Exhibit "A". That exhibit is very long, consisting of three single spaced typewritten pages in the transcript, and, as the sole question in the case seems to be the right of defendants to cancel Exhibit "A", before the date mentioned therein, and to revoke plaintiffs' authority thereunder, it does not seem necessary to quote Exhibit "A" in full. We will only refer to such parts of said exhibit as we deem essential to the only question in the case.
[12] The cases cited and the authorities support defendants' contention that, where the contract is unilateral, the owner of the property can revoke such contract of sale at any time, without liability to the named agent. So, the real question in the case is whether the contract for the sale of defendants' property, as stated in Exhibit "A", was unilateral. In other words, whether or not such contract lacked mutuality.
[13] Defendants asked declarations of law, A, B and C. Requested Declaration A is not set out in the transcript. We must therefore assume that no point is now made on its refusal.
[14] As declarations of law B and C involved the same contention defendants nor make, no point is made in appellants' brief as to their refusal, and we do not deem necessary to quote them.
[15] In paragraph 3 of the agreed statement of facts, it was agreed that "after the signing of Exhibit `A' by the defendants, and before the sale hereinafter referred to, the defendantsorally notified the agents of the plaintiffs to take the hotel described in Exhibit `A' from their list." (Emphasis ours.)
[16] It is therefore apparent that defendants did not give plaintiffs notice in writing, as specified in paragraph 3 of Exhibit "A".
[17] Exhibit "A" was signed by defendants and approved by G. C. Newcomb, local representative of plaintiffs.
[18] It was stated in paragraph 4 of the agreed statement of facts that plaintiffs spent considerable time and money in attempting to sell the property and in showing that property to prospective buyers, and that plaintiffs were on a deal, at that time, to sell such property. On this statement of facts, we must hold that plaintiffs had an interest in the contract of sale and that defendants had no right to take the property, described in Exhibit "A", from plaintiffs or to compel plaintiffs to take that property off their list.
[19] Under the authorities and cases cited even by defendants, plaintiffs had an interest in the contract of sale, which was attempted to be revoked by defendants, and plaintiffs were entitled to the judgment given them by the trial court.
[20] Respondents cite 12 C.J.S., Brokers, § 94, page 220. That paragraph reads as follows: "An action on the contract is proper where the contract expressly provides for the payment of a commission to plaintiff on any sale whether made by plaintiff or defendant."
[21] Respondents also cite Keeney v. Freeman, 236 Mo.App. 260,151 S.W.2d 532, 535. That was an opinion by the St. Louis Court of Appeals. The facts, as stated by Judge McCullen, were almost identical with the facts admitted in this case. In stating those facts, Judge McCullen said: "The evidence shows that plaintiffs were partners in the *Page 17 
real estate business in the City of St. Louis; that defendant entered into a real estate contract with plaintiffs whereby plaintiffs were given a six months' exclusive agency to sell property located at 6338 Amelia Avenue in the City of St. Louis, being a lot forty feet by one hundred and fifteen feet, with a brick bungalow thereon. The contract was dated August 11, 1938. By its terms, defendant agreed that, in the event the said real estate was sold within six months from the date thereof, he would pay to plaintiffs five per cent, on the gross amount of the sale up to and including $20,000."
[22] In disposing of the case, Judge McCullen said: "In view of the whole record, we think the action of the trial court was proper. It was undisputed that defendant entered into the contract in question. The contract provided for an exclusive agency in plaintiffs; it also provided for a five per cent. commission to be paid to them by defendant if a sale should be `made by any one' within the six months period after the contract was made. It is conceded that the property was sold within the six months' period for $4,500. Hence the amount of the commission at five per cent. was $225, which was the amount of the verdict. In view of such a record showing no substantial evidence to support any kind of a defense, there was nothing for the trial court to do but direct a verdict for plaintiffs."
[23] In George J. Wanstrath Real Estate Company v. Wenz, also cited by plaintiffs, as in 185 Mo.App. 162, reported in 170 S.W. 345, 346, Judge Allen of the St. Louis Court of Appeals, said: "It is urged that the defendants could rightfully revoke plaintiff's agency, upon the theory that the latter was one not coupled with an interest, which the principal could terminate at any time, that defendants had so terminated the same, and that hence the contract was not in force when defendants sold their property. But this contract not only appointed plaintiff as defendants' agent, but defendants thereby agreed to pay plaintiff a commission upon the sale price of the house, whether such sale were made by plaintiff, the defendants, or any one else, during the life of the contract, whereby the defendants disabled themselves from making a sale of their property, without liability to plaintiff, during the period for which the contract would lawfully remain in force."
[24] That case was almost identically like the case at bar, except that the time limit was not shown to have been definitely fixed, as here. Respondents have cited a number of cases to the same effect, but we will not lengthen this opinion by reviewing them, since it seems to us so unreasonable that the owner of property can enter into a contract of sale thereof and agree on a commission to be paid to the real estate agent, under certain circumstances, and then have the power to revoke the authority of the real estate agent before he has actually made a sale, and before the time stated, and that the owner can thereafter proceed to sell the property himself, at a less price than fixed by said contract of sale, and thereby defeat the claim of the real estate agent for the commission provided by such contract.
[25] We do not see how the trial court could have rendered a judgment for defendants, under the circumstances in this case.
[26] The judgment is affirmed.
[27] VANDEVENTER, P. J., and McDOWELL, J., concur.
On Motion for Rehearing.