EDMUND LEET,

*Plaintiff and Respondent,*

v.

GLEN H. JODER,

*Defendant and Appellant.*

EDMUND LEET,

*Plaintiff and Appellant,*

v.

GLEN H. JODER,

*Defendant and Respondent.*

(Nos. 2718 and 2719; April 2nd, 1956; 295 Pac. (2d) 733)

For the defendant and appellant in Case No. 2718 and defendant and respondent in Case No. 2719, the causes were submitted upon the briefs of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and oral argument by Mr. James A. Greenwood.

For the plaintiff and respondent in Case No. 2718 and plaintiff and appellant in Case No. 2719, the causes were submitted upon the briefs and also oral argument of William G. Watt of Wheatland, Wyoming.

## OPINION

Parker, Justice.

Both defendant and plaintiff have appealed from the judgment in this case. The appeals were discussed and presented as two cases in the briefs but as one in oral argument. They will be considered in our discussion as separate phases of the same case.

The facts as relevant in the appeals may be summarized as follows: On September 22, 1950, plaintiff, Edmund Leet, a Wheatland real estate dealer, wrote a letter to defendant, Glen H. Joder, enclosing the following instrument:

"Sept. 22, 1950

"TO Edmund Leet
    Wheatland, Wyoming

"In consideration of your listing for sale on your books and undertaking to find a purchaser for the real estate described herein, I hereby appoint you my exclusive, not excepting myself, agent to make sale of the real property described as

The Joder Farm, consisting of 656.84 acres (sic) more or less.

located in Section 36, Twp 24 Range 68 and also in Section 1, Twp. 23, Range 68. Platte County, Wyo.

for the price of $32000.00 upon the following terms:

$5000.00 cash, balance $270000.00 secured by a mortgage thereon or contract of sale payable $2000.00 and interest at 5% on a yearly basis for five years, and the balance due the sixth year. Purchaser is to pay all taxes and irrigation water assessments for the year 1951 on following years. and you are hereby auth-

orized to accept a deposit to be applied on the purchase price, and to execute a binding contract of sale on my behalf.

"I agree to pay you, my said agent, a commission of five percent on the sale price, if a sale is made either by myself or yourself during the life of this contract, and to convey said property to the purchaser by a good and sufficient deed, clear of encumbrance. I also agree to furnish a satisfactory abstract of title to date, if said property is sold or exchanged by the owner within 90 days after expiration of this contract to any person with whom said Edmund Leet negotiated with in respect to a sale during the life thereof, or if the property is withdrawn from sale by me during the term of this contract I agree to pay Edmund Leet a commission of five percent on the sale price.

"This contract to continue until and including Dec. 24, 1950 and thereafter until terminated by giving unto you, my said exclusive agent, five days notice in writing.

/s/ Glen H Joder
Cheyenne, Wyo."

Plaintiff's letter read in part:

"I am enclosing the sale listing agreement for your signature. I have already advised my correspondent in Denver and also Scotts Bluff about the property as I wanted to get the sales work started without delay, however I must have the agreement by return mail.

"Doctor, I believe that I can place this property for you at $32000.00. Will get all the cash down possible for you, but terms will help a lot in making a sale. You will note the terms as listed on the form are only for the purpose of getting going. When I can get a real interested party, circumstances in his particular case will likely require a change in terms.

"Likely you will not get this before Monday, as this is Friday evening.

"In all my life I never knew of a time when real estate moved so readily. I am sure you could never do better than now. As you said you cannot give the place the attention you should, so by selling the venture will turn out to have been a very good investment anyway.

"Let me have the listing my return mail."

On September 27, 1950, defendant complied, returning the signed instrument to plaintiff with the following letter:

"I am enclosing the original copy of the sales agreement on the Wheatland farm which you sent to me. I realize that the terms of the sale will in all probability be different than you have them listed, but I think you should keep in mind that the amount of the down payment should be higher than you show it. If it became necessary to accept only $5000.00 down then I would want to be very sure of the contracting parties before I could agree to sell on that basis. I merely emphasize that point here so there will not be any misunderstanding about it.

"I assume that you intend for me to keep the duplicate copy of the agreement in my files. More power to you and I hope that you can get something done in the near future."

Plaintiff, according to his testimony, thereafter advertised the property, contacted other real estate dealers and possible buyers, and maintained communication with defendant until January 1951 when defendant with the knowledge of plaintiff began negotiations with one Jacob Sinner culminating in the sale of the farm to him on February 24, 1951, for $32,000. Plaintiff in his suit sought to collect a commission of 5 percent on the sale price in accordance with the statement in the listing plus interest and costs. In additional causes of action he sought $44.52 expenses relating to release and abstracts and $75 for services in procuring a loan for defendant. Defendant in his answer admitted that he signed the listing, that on February 24, 1951, he entered into an agreement with Jacob Sinner to sell the farm for $32,000, and said that the sale price was later modified and reduced to $20,000. (This statement is somewhat clarified by Joder's admission on cross-examination that Sinner assumed and agreed to pay a mortgage on the property of $9,975 and assigned a mortgage on some Washington real

property to Joder.) Defendant denied generally certain allegations and contentions of the plaintiff but made no substantial contradiction to the plaintiff's claims as above outlined; and in the jury trial of the cause, he relied for his defense essentially upon the nonexistence of any contract between the parties insisting that plaintiff had no connection with the sale and that the listing, letters, and other negotiations between the parties were all of a preliminary nature, without consideration, and culminated in no contractural relationship between the parties.

The jury found for plaintiff in the sum of $1,600. From a judgment based on the verdict, defendant has appealed, insisting that he owes no amounts; and plaintiff has simultaneously appealed, arguing that defendant owes not only the $1,600 commission but also interest on that amount from the date of the sale of the property.

## Case No. 2718

We shall consider first defendant's specifications of error on the ground that (a) the judgment is contrary to law, (b) the judgment is contrary to the evidence, and (c) the judgment is not supported by any substantial evidence.

Defendant's position in this court is that there was no agreement or contract between the parties, that everything which occurred between them was in the nature of preliminary negotiations. He contends that Leet did not produce a buyer and that evidence relating to his efforts to sell the farm was improperly received, while plaintiff responds that there was an exclusive brokerage fully effective on February 21, 1951, for two reasons:

(a) There was no notice of termination.

(b) In January 1951 defendant urged plaintiff to continue trying to sell the property.

Inasmuch as few of the cases and authorities cited by counsel for either plaintiff or defendant pertain directly to the points here in issue, it will be well to bear in mind that analogies are helpful only insofar as they are applicable. In that respect, no decision determines the law, *except as it relates to the specific facts before the court.*

Defendant cites as factually similar to the case at bar Stevens v. Brimmer, 35 Wyo. 452, 251 P. 1, 49 A.L.R. 919, in which preliminary negotiations were held by the court to be insufficient to constitute an agreement. That case deals with a situation in which there was an exchange of letters but *no instrument* relied upon as a contract. The fact of there being no instrument in the Stevens v. Brimmer case distinguishes it from the one at bar and renders it of little assistance.

Defendant calls attention to Diamond Cattle Co. v. Clark, 52 Wyo. 265, 74 P. 2d 857, 867, 116 A.L.R. 912, as presenting a situation in which the actions of the parties were held to be merely preliminary negotiations. An examination of that case shows that there a prospective purchaser had an option for the signing of a contract with a provision for forfeiture of earnest money if he did not sign. The opinion in the portion quoted by defendant's brief is interesting:

" * * * The transaction, so far as Dobson was concerned, was probably no more than an agreement to sign a contract to purchase, or to forfeit the $100 earnest money. It might be described as an option for which the earnest money was the consideration. * * * " This remark by the court epitomizes the view which a careful reading of the case suggests, i.e., it is so different from the instant situation that it is wholly inapplicable and unconvincing.

Defendant relies upon Hartford v. McGillicuddy, 103 Maine 224, 68 A. 860, 862, 16 L.R.A. (N.S.) 431, 12 Ann. Cas. 1083, as authority for the rule that "in the absence of definite agreed terms of sale there is no contract." At first consideration, it might seem that this case has some application to the present problem; but on analysis we note its facts and find that it is an action of assumpsit by a real estate agent for a percentage of the sale price, plaintiff claiming that he procured a customer on the authorized terms. Plaintiff-agent was granted a judgment for his commission; and this judgment was affirmed on appeal, the court stating:

"The second point raised by the defendant is that the evidence does not sustain the finding of the jury that the plaintiff procured a purchaser for the land in 1906 for $2,800. The rule as laid down in recent decisions in this state requires that the agent shall procure and produce to the principal a customer willing and prepared to purchase and pay for the property at the price and on the terms given by the principal to the agent. * * * "

As will be apparent from our short statement of the case, from the portion quoted above, and from a careful reading of the opinion, there is nothing in that case about an exclusive listing, such as the instrument here signed by Joder and mailed to Leet purported to be. Because of dissimilarity in the factual situation, that case is of little importance in resolving the problem now before us.

Defendant quotes A.L.I. Restatement, Contracts (1932) §§ 25 and 26, to show that there was no contract here and for that reason there can be no recovery:

"If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed pur-

pose until he has given a further expression of assent, he has not made an offer."

"Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions as stated in § 25."

It will be noted that in these quoted sections, and in the restatement "comment" following each of them (also quoted by defendant), the words "intention',, "intended," and "intend" are used. The use of these words indicates to us that the A.L.I. committee considers an interpretation of the intention of the parties by the trier of facts—in this case the jury—to be essential to a determination of any case. How else can it be decided that "manifestation of intention" and "mutual manifestations of assent" do or do not exist? We note in the "comment" following § 25 of the A.L.I. Restatement, supra, it is said:

"It is often difficult to draw an exact line between offers and negotiations preliminary thereto.   *   *   * Besides any direct language indicating an intent to defer the formation of a contract, the definiteness or indefiniteness of the words used in opening the negotiation must be considered, as well as the usages of business, and indeed *all accompanying circumstances.*" (Emphasis supplied.)

We are impressed with this implication that the *intention* is of primary importance in transactions of this nature and that more must be considered than mere words. This places the matter peculiarly within the province of the jury. In essence, a finding for the prevailing party must be based upon the fact-finder's interpretation of conflicting evidence. The attitudes, the actions, the conduct, and even the inflections of the witnesses would properly have a bearing upon a jury's verdict in any case of this nature. Without the benefit

of all this information, an appellate court's reversal of a jury's verdict upon such a point would be an arbitrary interference with the perogative of the fact-finding body. See State v. Faulkner, Wyo., 292 P. 2d 1045, 1050, citing numerous Wyoming cases.

In the light of our views as above expressed, it is probably unnecessary to discuss the other authorities presented by the defendant on this general subject; but we shall mention them briefly. Defendant cites A.L.I. Restatement, Agency § 445 c. and d., which discussess contracts in which "compensation is conditional upon the performance * * * of specified services" (as differentiated from exclusive listings). As we have indicated, these two types of broker's contracts are distinguishable; and a rule governing one has little or no bearing on the other. It is logical for us after considering A.L.I. Restatement, Agency § 445, to review the balance of this authority on the subject; and in so doing, we find at § 449, in paragraphs b. and d., some statements apparently applicable to the present situation:

" * * * A contract to give the 'exclusive sale' of specified property ordinarily indicates that the agent is to have the exclusive power. The use of the words 'exclusive agency' or 'exclusive sale' is not conclusive but, as in other cases involving interpretation, all the circumstances must be considered."

"The principal is subject to liability for the agreed compensation, if the agreement is interpreted as including a promise by him that the agent is to receive it upon the accomplishment of the result by another agent, in the case of an exclusive agency, or by the principal or another agent, in the case of an exclusive power. * * * "

Defendant relies on Rosenfield v. United States Trust Co., 290 Mass. 210, 195 N.E. 323, 122 A.L.R. 1210, 1215, as authority for the following rule, included in the portion of the case which he quotes:

"Normally, the fact that parties contemplate the execution of a final written agreement effects a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. * * * Said fact does not conclusively establish such intention. * * * "

An examination of this excerpt is sufficient, in itself, to indicate that (a) any such inference is rebuttable, (b) *intention* is the important factor in such a situation; and intention depends upon facts. In that case, it was determined that there was insufficient evidence to go to the jury; but it should here be noted that the court after referring to a memorandum, two draft leases (unsigned), and certain later negotiations, said, 290 Mass. at page 219, 195 N.E. at page 326, 122 A.L.R. at page 1217:

" * * * There is no evidence that these subsequent negotiations were evidenced by writing, much less that they were signed by the defendants or by anyone thereunto duly authorized. * * * "

It follows that the Rosenfield case presents facts so different from the instant litigation that comparison of the two avails little. Defendant cites in this connection Annot., 122 A.L.R. 1217, 1245, entitled "Intention of one party only," which by its title, as well as its text, supports the other mentioned authorities in saying that "intention" is the vital factor in deciding whether or not a contract exists.

Defendant refers to Elkhorn-Hazard Coal Co. v. Kentucky River Coal Corp., 6 Cir., 20 F. 2d 67, as precedent for the rule that the mailed acceptance of the terms of an offeror does not necessarily constitute a contract. In that case, the court refused to construe as binding an offer to make a lease because, according to the court's construction, the letter, discussing the terms and conditions, was not intended as an offer. Not only are the facts unlike those in the case at bar, but the portion of the opinion quoted, citing 6 R.C.L.

240

§ 23, p. 600, and Mississippi & Dominion Steamship Co. v. Swift, 86 Maine 248, 29 A. 1063, 41 Am. St. Rep. 545, 553, discusses "intention" and "intended" as being essential to the creation of the contractual relation. Thus, in final analysis, the law cited is not applicable to the present situation.

Defendant argues that plaintiff in his petition fails to allege, and in the trial fails to prove, damages for breach or termination of the contract and cites as authority 12 C.J.S., Brokers § 17:

"The measure of damages to which a broker is entitled in case the principal refuses or fails to comply with his contract with the broker is the damage which actually results from the breach and will compensate him for the injury sustained, not exceeding the contract price for the services which he has performed. If he fails to show damages, he is entitled to recover nothing, or at most only nominal damages, and mere proof of breach of the contract is not proof that any damage was suffered."

15 Am. Jur., Damages § 44:

"As a general rule, the loss or injury actually sustained, rather than the price paid or agreed to be paid on full performance, is the proper measure of damages for breach of a contract, notwithstanding from the nature of the subject matter such damages may be difficult of ascertainment."

and the following cases: Patterson v. Johnson, 187 Iowa 663, 174 N.W. 363; Jacob v. Cummings, 213 Mich. 373, 182 N.W. 115; Mt. Ida School for Girls v. Rood, 253 Mich. 482, 235 N.W. 227, 74 A.L.R. 1325; Poinsettia Dairy Products v. Wessel Co., 123 Fla. 120, 166 So. 306, 104 A.L.R. 216; Perry v. United States, 294 U. S. 330, 55 S. Ct. 432, 79 L. Ed. 912, 95 A.L.R. 1335.

The rules thus stated and borne out by the cited cases are correct statements of the law relating to damages for breach of a broker's contract. However, in this case the philosophy of the plaintiff has been

that there was no breach of contract but rather a fulfillment, up to the point of payment. Plaintiff did not undertake to proceed with the suit in damages; and if the damage avenue be the only route available to him, then he must fail. We, therefore, analyze the situation to determine whether or not the exclusive remedy of one in the plaintiff's position is a suit for damages or whether he may sue on contract.

The general philosophy of the courts on this point is indicated in the two citations presented in plaintiff's brief from 8 Am. Jur., Brokers §§ 208 and 209:

"A right of action arises in favor of the broker against the principal wherever the latter violates his duty to the former. Thus, he may maintain an action for compensation, and for damages for a wrongful revocation of the broker's authority if the broker elects to rescind. * * * "

"A broker whose authority is wrongfully revoked may pursue either of two courses of conduct. He may consider his contract of employment as rescinded and sue for damages, in which event he is entitled to have his recovery include the value of the services he has already rendered, his disbursements, and such prospective profits as he can establish would have been his but for such revocation; or he may refuse to consider his contract as rescinded, and if he proceeds and succeeds in performing that which his contract requires that he shall perform, his employer is liable for the agreed compensation. * * * "

This authority indicates that in a situation of this nature there are two courses of conduct open to the broker. The subject is discussed more specifically in 12 C.J.S., Brokers § 102:

"Under a contract to pay a commission on a sale of land by the broker, or by the owner or another during the broker's agency, the broker's remedy on the owner's sale of the property before termination of the agency is an action for the agreed commission, and not for breach of contract. * * * "

The cases cited under Note 90 of this authority and

some others found under Key-Number 79 of Brokers in the West Digest System give specific illustration of what is meant. For example, Blank v. Longenberger, 132 Misc. 374, 229 N.Y.S. 97, 99, 101 (later reversed on another point), discusses a suit by a broker for commission under an exclusive agency to sell real estate. At the close of the evidence in the case, the defendant moved to dismiss the complaint on the ground that the plaintiff had mistaken his cause of action in that he brought:

" * * * the action to recover for commissions earned, and that such right exists only when plaintiff procures the purchaser of the property, and, in the case at bar, the broker not having procured the purchaser, his only claim, if any, against the defendant, would be for damages sustained for breach of contract * * * ."

In response, the court said:

" * * * the action is properly brought as one for commissions, and , * * * an action for breach of the contract herein does not lie, under the circumstances of this case."

Similarly, in the case of Kenney v. Freeman, 236 Mo. App. 260, 151 S. W. 2d 532, 534, a suit by real estate brokers for commission on a contract which provided that in the event the real estate was sold within six months from the date of the contract the owner would pay the brokers a commission on the selling price, plaintiffs' theory being that they should recover because they were appointed as seller's exclusive agents. There was a judgment for plaintiffs in the trial court on an instructed verdict; and the reviewing court in affirming the case said inter alia:

"It will be noted that plaintiffs' suit is based upon the contract in question and is not a suit for damages for breach thereof. The general rule is stated in 12 C.J.S. under the title 'Broker', § 94, page 220, as follows: 'An action on the contract is proper where the contract expressly provides for the payment of a com-

mission to plaintiff on any sale whether made by plaintiff or defendant.' "

From the above, it is clear that plaintiff was entitled to bring a suit on the contract; and the petition appears to be sufficient to state a cause of action. See 2 Bancroft's Code Pleading (1926), § 1066.

Defendant's objections to instructions are not assigned as specifications of error and may not be raised at this time. 3 Am. Jur., Appeal and Error § 695. See Slane v. Curtis, 41 Wyo. 402, 418, 286 P. 372, 288 P. 12, 13, 69 A.L.R. 906; Hein v. Marcante, 57 Wyo. 81, 108, 113 P. 2d 940, 949.

The discussion of defendant regarding objections to various questions asked at the trial is only cursory and presents no cases or authorities indicating the reasons that such questions were improper. Suffice to say that such objections are in line with defendant's philosophy of the case and must stand or fall with the court's ruling on the subject of the effect of the preliminary negotiations and exclusive listing.

Casual reference was made in the oral argument but no question raised in the briefs regarding indefiniteness of the listing because of the provision:

"This contract to continue until and including Dec. 24, 1950 and thereafter until terminated by giving unto you, my said exclusive agent, five days notice in writing."

The authorities indicate that agreements so terminable, especially contracts of employment, are sufficiently definite. See 17 C.J.S., Contracts § 503; 12 Am. Jur., Contracts § 68; 1 Williston on Contracts (rev. ed. 1936) § 38; 4 Williston on Contracts (rev. ed. 1936) § 1027A.

For the reasons above stated, the judgment is affirmed.

*Affirmed.*

Case No. 2719

Plaintiff in his specifications of error complains of (a) the overruling of his motion for a directed verdict (including interest), (b) the overruling of his motion for a judgment for interest (notwithstanding the jury's failure to allow interest), (c) the judgment being contrary to law in omitting interest, and (d) the jury's verdict being contrary to law in omitting interest.

These specifications all relate primarily to the same matter, i.e., disallowance of interest, and need not be discussed separately.

Plaintiff bases his claim upon, and quotes, § 39-1104, W.C.S., 1945:

"On money due on any instrument in writing, in the absence of contract specifying the rate, or on settlement of an account from the day balance shall be agreed upon; on money received to the use of another, and retained without the owner's consent, express or implied, from the receipt thereof, *and on money* loaned or *due, and withheld by unreasonable delay of payment, interest shall be allowed at the rate of seven (7) per cent per annum.* Unsettled accounts shall bear interest after thirty (30) days from the date of the last item thereof." (Emphasis supplied by plaintiff.)

Inasmuch as plaintiff relies solely upon the words that he has emphasized and urges no other point in his appeal, we shall direct our attention to the manner in which the "unreasonable delay" was and should have been determined.

Plaintiff argues that the trial court, under the provisions of § 3-3605, W.C.S., 1945, as interpreted in Hefferin v. Scott Realty Co., 71 Wyo. 114, 123, 124, 254 P. 2d 194, 196, had authority to allow the requested interest by means of a judgment notwithstanding the verdict. We therefore check the instant case to determine its status under the criteria established by Chief Justice Blume in Hefferin v. Scott Realty Co.,

supra, when he quoted with approval the following rule:

" ' * * * to render a judgment non obstante veredicto, the court is not justified in trespassing on the province of the jury to be the judges of all questions of fact in the case * * * ."

In the case now before us, the evidence indicates an entire lack of agreement between the parties regarding defendant's liability for payment of a commission —and incidentally the time of payment. Both these questions were presented to the jury for decision, and the jury decided that (a) plaintiff was entitled to a commission and (b) he was not entitled to the interest.

The authorities are voluminous on the question of the trial court's right to include interest in a judgment despite the jury's failure or refusal to allow it in the verdict. 33 C.J., Judgments § 110 states:

" * * * If plaintiff is entitled to interest on his claim or demand, it must be found by the jury and included in their verdict; if the jury do not allow interest in their verdict, the court cannot allow it, and it is error to give judgment for interest in addition to the amount of the verdict. * * * "

This matter is brought forward in 49 C.J.S., Judgments § 58, which provides:

"As a general rule the judgment must be supported by, and conform to, the verdict, decision, or findings with respect t othe allowance of interest and the amount thereof, and if the jury do not allow interest in their verdict the court cannot allow it. * * * "

On this subject 2 Bancroft's Code practice and Remedies (1927) § 1569, provides inter alia:

" * * * a court may not correct a verdict in respect of a matter of substance, or make an amendment that probably would not have been agreed to by the requisite number of jurors. * * * "

See also 53 Am. Jur., Trial § 1096. A comprehensive discussion of the interest problem, including a classification of cases which have been cited as precedent, is

found in Annot., 72 A.L.R. 1150, which discusses the situation in which the jury has (a) awarded interest without computation, (b) omitted interest to which the plaintiff is legally entitled, or (c) passed upon the right of the plaintiff to have interest .

One of the most interesting cases dealing with this matter is Printing Industry of Portland v. Banks, 150 Or. 554, 46 P. 2d 596, 600. This was an action seeking to hold defendants liable for supplies. In the trial of the case to a jury there was no reference to interest in any instruction, and the verdict did not mention it. Nevertheless, the trial court included the item of interest in the judgment. The supreme court pointed out, in reversing the case, the Oregon statute (similar to § 3-2421, W.C.S., 1945) which required the jury to assess the amount of recovery and quoted Fiore v. Ladd, 29 Or. 528, 46 P. 144, 145, with approval as determinative of the case before it:

" ' * * * it is not only the province, but the duty, of a jury to find the amount of the recovery, as well as plaintiff's right to recover, and the findings upon both questions after the verdict is received and the jury discharged are binding upon the court, unless the verdict is set aside in some manner provided by law. When, therefore, a verdict has been returned by a jury which expresses their intention, and they have been discharged, the court is powerless to amend it, however erroneous it may be. It must either enter a judgment thereon, or set it aside, and grant a new trial. [citing many cases.] This case affords an illustration of the importance of such a rule. The jury were able to agree on a verdict for $800, probably as a compromise, but it is manifest that they were unwilling to render one which included interest; but by the act of the court in amending the verdict this purpose and intention of the jury has been wholly disregarded and they have been made unwillingly to agree to a verdict which they in the first instance expressly refused to assent to. * * * "

This philosophy of the Oregon court is of a practical

nature and dignifies the jury by indicating both its importance as an integral part of our legal system and its difficulties in reaching a mutually satisfactory verdict. The court's views are, moreover, fully consistent with the following eminent authorities which indicate the proper correlation of verdicts to judgments in money actions:

"The judgment must follow the verdict, and if the jury have found a verdict for a specified sum of money, the court cannot render judgment for any greater amount; if the verdict is wrong, the remedy is by a new trial. * * * " 1 Black on Judgments (2d Ed.) § 142.

"An allowance of interest in the judgment must be supported by findings or verdict making provision therefor or affording the requisite data for the computation and allowance, except as the statute may itself provide for the inclusion of interest." 1 Freeman on Judgments (5th Ed.) § 88.

It is, of course, necessary that each case be determined upon the specific facts presented by the evidence; but the situation at bar points up clearly a distinction appearing in most of the above authorities, i.e., inasmuch as the court's power to add interest to the verdict is based upon the assumed failure of the jury to grant the plaintiff that to which he is entitled as a matter of law, the court cannot add interest when (a) it was a part of the damages or (b) it is impossible to ascertain whether the jury has included interest in the award on an unliquidated contract or claim. See 53 Am. Jur., Trial § 1096; Annot., 72 A.L.R. 1150, 1159.

We think that the question of Plaintiff Leet's right to interest was a question of fact rather than a matter of law. It was, therefore, properly submitted to, and answered by, the jury; and since no new trial was asked, the verdict should control the judgment.

*Affirmed.*

BLUME, C. J., and HARNSBERGER, J., concur.

## ON PETITION FOR REHEARING

A petition for rehearing was filed in this case, and was denied without opinion on June 11, 1956.