**UNITED STATES of America, Appellant,**

v.

**Claude JOBIN, d/b/a Jobin Associates, Inc., Appellee.**

**No. 75–1433.**

United States Court of Appeals, First Circuit.

Argued March 5, 1976.

Decided May 20, 1976.

---

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is a government appeal, pursuant to 18 U.S.C. § 3731, from an order granting a motion to suppress evidence obtained in violation of Internal Revenue Service guidelines. Relying upon *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970), the district court ordered the exclusion of all oral statements and records obtained from the taxpayer defendant as a result of certain specified interviews. We affirm in part, and reverse in part.

In the underlying criminal tax prosecution, defendant-appellee Claude Jobin and Embassy Homes, Inc. were charged with thirteen counts of wilful failure to file a return, supply information, or pay tax, 26 U.S.C. § 7203. During the period covered by the information, Claude Jobin was doing business as Jobin Associates, Inc.[1] (Associates), engaged in framing homes, a portion of the building construction process. Embassy Homes, Inc. (Embassy) was a New Hampshire corporation owned and operated solely by Jobin and his wife. It served as the prime contractor for some of the projects on which Jobin Associates, Inc. worked. The gravamen of the information filed against Jobin and Embassy was that they had failed to file returns and pay over the taxes withheld from their employees, i. e., federal income tax withheld, and social security taxes.

On April 19, 1973, Special Agent Donald Cote of the IRS left four summonses at the field office of Associates for the production of the records of Associates and Embassy.[2] In response to the summonses, Jobin arranged a meeting with Special Agent Cote at the office of the IRS in Manchester, N.H. for May 2, 1973.

Under Internal Revenue Service Guidelines, Special Agents are required to give

Robert A. Schwartz, Asst. U. S. Atty., Concord, N. H., with whom William J. Deachman, U. S. Atty., Plymouth, N. H., was on brief, for appellant.

David A. Brock, Concord, N. H., by appointment of the Court, with whom Perkins & Brock, Concord, N. H., was on brief, for appellee.

1. When Jobin formed Jobin Associates, Inc., he contemplated that it would be incorporated under New Hampshire law. The formal steps, however, were never carried out. Thus, during the period in question, Jobin Associates, Inc., despite its name, was a sole proprietorship.

2. Although the record is unclear, we shall assume these were summonses pursuant to 26 U.S.C. § 7602(2).

taxpayers warnings concerning their rights at the outset of an interview.[3] Cote testified at the suppression hearing that he gave Jobin all the required warnings at the meeting on the morning of May 2 (morning meeting) except the statement concerning the assistance of counsel (the attorney warning). The district court found, however, that Agent Cote also omitted that portion of the required warnings as contained in the official NAR Pub. 120 which provides that the Special Agent inform the taxpayer that "one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws . . ." (the criminal warning). An extended interview then took place during which Jobin turned over various records of his business enterprises.

On the afternoon of May 2, Special Agent Cote visited Jobin at his residence and obtained additional records (the afternoon meeting). Cote testified at the suppression hearing that he repeated the warnings of NAR Pub. 120 at the outset of this meeting. An agent who accompanied Cote to the afternoon meeting corroborated this testimony. The district court, however, found otherwise. There were two subsequent meetings between Cote and Jobin: on June 19 and October 1, 1973. Agent Cote testified, and the district court found, that the proper warnings had been delivered prior to these meetings.

On the basis of its findings of fact, the district court held that Special Agent Cote had not substantially complied with the IRS warning regulations. It suppressed all evidence gathered by the government in the course of the interviews, including both the

Embassy corporate records and any evidence procured after Jobin had been fully informed of his rights on June 19, 1973.

The government raises several claims on appeal. First, it challenges the district court's findings that Agent Cote failed to advise Jobin concerning the possible criminal nature of the investigation on the morning of May 2, and that Cote failed to give any warnings on the afternoon of May 2. Second, it contends that the omissions of Agent Cote were not so serious as to compel suppression under *United States v. Leahey, supra*. Finally, it states that suppression should not extend to either the corporate records nor to the evidence obtained from Jobin after he had been fully warned.

■ The findings of the district court after a hearing on a pre-trial motion to suppress are binding on appeal unless they are clearly erroneous. *United States v. Cepulonis*, 530 F.2d 238, 244 (1st Cir. 1976); 3 C. Wright, Federal Practice & Procedure § 678. As noted above, Agent Cote testified that he had given the criminal warning at the outset of the morning meeting. The defendant and the other agent who was present at this interview did not testify. Ordinarily, uncontradicted testimony which is not inherently improbable or questionable should control the decision of the trial court. *Dudley v. United States*, 428 F.2d 1196, 1202 (9th Cir. 1970). Here, although Agent Cote's testimony was not directly contradicted, there was sufficient evidence to support the district court's contrary finding. The interview on the morning of May 2 was tape recorded and the transcript of the recording does not contain the contested

---

**3.** Special Agents investigate criminal violations of the tax laws. In contrast, Revenue Agents investigate civil matters, and are not required to give warnings. At the time of the interview, Special Agents were required to give the following warnings:

"As a Special Agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses.

"In connection with my investigation of your tax liability (or other matter) I would like to ask you some questions. However,

first I advise you that under the 5th Amendment to the Constitution of the U.S. I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any information which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of any attorney before responding." NAR Pub. 120.

warning.[4] Second, Agent Cote admitted on cross-examination that he was testifying essentially as to his habit of reading the warnings before an interview, and not from any specific recollection of his actions on May 2. The finding of the district court that Agent Cote failed to give the criminal warning is not clearly erroneous.

The other contested factual finding presents a more difficult question on appeal. Not only did Agent Cote testify that he gave the required NAR Pub. 120 warnings at the outset of the afternoon meeting, but the Special Agent who accompanied him also testified in corroboration. Unlike that of Agent Cote, the second agent's testimony was unimpeached on cross-examination. On the contrary, he was able to accurately remember the content of all the NAR Pub. 120 warnings and stated that he was testifying from his recollection. We recognize that the credibility of witnesses is peculiarly within the competence of the trial court. *United States v. Montos*, 421 F.2d 215, 219 n. 1 (5th Cir. 1970), *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970). Here, however, we are firmly convinced that a mistake has been made, *see United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746, 765 (1948); *Welch & Corr Construction Corp. v. Wheeler*, 470 F.2d 140, 141 (1st Cir. 1972), due in part to the peculiar history of this finding of fact.[5] We conclude that the district court must have overlooked the testimony of the second witness to the afternoon meeting when drafting this finding, and hold that the finding that there were no warnings given before the afternoon meeting must be vacated as clearly erroneous.

The vacation of this finding of fact, while helpful to the government, does not dispose of this appeal. Three issues remain: whether the omission of the criminal and attorney warnings at the morning meeting of May 2 requires suppression of the evidence gathered at that meeting; if so, whether the "fruit of the poisonous tree" doctrine is applicable to suppress evidence gathered after adequate warnings had been given, and whether corporate records should be suppressed.

█ In this court's initial decision in this area, *United States v. Leahey, supra*, we found that, as a matter of due process, suppression of evidence was an appropriate sanction to insure IRS compliance with its announced policy of warning individuals investigated by Special Agents. Our two subsequent decisions, *United States v. Bembridge*, 458 F.2d 1262 (1st Cir. 1972), and *United States v. Morse*, 491 F.2d 149 (1st Cir. 1974), held that only a breach of the "substance and spirit" of the IRS regulations, and not their literal form, would warrant exclusion. *United States v. Morse, supra* at 156. The district court found that the omission of the two warnings, together, constituted a significantly substantive violation of the purposes underlying the IRS warning regulations, and merited the sanction of exclusion. We agree.

As noted in *Leahey, supra*, 434 F.2d at 8, the IRS promulgated the instant regulation as a response to the Court's request in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), for "increasingly effective ways of protecting the rights of the individual while promoting efficient enforcement of our criminal laws." 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 720. As such, the warnings were "designed to

4. Agent Cote testified that he gave the contested warning before turning on the tape recorder. Because the criminal warning is the first warning and is contained in a separate paragraph of NAR Pub. 120, this testimony is not inherently incredible.

5. The history of the finding of fact is illuminating. As originally drafted the district court found that "the only warning given to the defendant on May 2 is the one contained in . . .

the interview transcript." No mention was made of the afternoon meeting. On a motion of the government to amend the memorandum opinion, the district court declined to make a finding that the warnings were given at the afternoon meeting. It stated that little credibility attached to the testimony of Agent Cote. It made no mention of the second Agent's corroborating testimony.

protect the rights and immunities of potential criminal defendants", *Morse, supra,* 491 F.2d at 156, from being inadvertently and unknowingly waived. The district court found that the warning concerning the right to consult with an attorney was an important protection: "[A] criminal tax matter is one in which the services of an attorney at an early stage are most important. The intricate maze that comprises our tax law cannot be navigated without skilled counsel, and, even then, the footing is oft-times slippery." Just as importantly, the omission of the criminal warning may seriously affect the taxpayer's decision whether to waive his Fifth Amendment rights. Many ·tax violations have both criminal and civil consequences. Logically, a taxpayer might waive the privilege to remain silent during a civil investigation for fear the invocation of the privilege would provoke a criminal investigation. By omitting the two warnings, Special Agent Cote failed to convey to Jobin the substance and spirit of the NAR Pub. 120 warnings. Exclusion of the evidence gathered at the morning meeting on May 2 is warranted.

The district court found that not only the evidence obtained directly in the morning meeting should be suppressed, but also all evidence obtained from Jobin in subsequent meetings. It stated, "[t]he warnings given to the defendant about counsel at the interviews subsequent to the one of May 2 were too little and too late." The district court was, of course, basing its analysis on its finding that no warnings had been given before the afternoon meeting of May 2. As noted above, this finding has been vacated. Thus, we begin our discussion of whether the "fruit of the poisonous tree" doctrine should apply so as to exclude evidence acquired in the later meetings from a different factual premise.

This court has never decided whether the "fruit of the poisonous tree" doctrine should apply in principle to violations of the IRS self-imposed warning regulations. *But cf. Morse, supra,* 491 F.2d at 156. One other court has assumed that the doctrine applies, *see United States v. Sourapas,* 515 F.2d 295,

299 (9th Cir. 1975). For the purposes of this case, we shall assume its applicability in principle.

Although there are no cases analyzing exclusion of indirect evidence obtained following a violation of IRS warning regulations, we think there is a close analogy in cases concerning the admissibility of confessions obtained subsequent to an inadmissible confession. *See, e. g., Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *Darwin v. Connecticut,* 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *Knott v. Howard,* 511 F.2d 1060 (1st Cir. 1975). In both situations, the "derived" evidence is the defendant's statement (or records) made at some time subsequent to the primary violation. The issue of whether the subsequent statement is "tainted" cannot be resolved by inquiry into possible or actual independent sources for the "derived" evidence—as is possible with physical evidence obtained through information generated in an inadmissible confession or an illegal search.

Perhaps our own decision, *Knott v. Howard, supra,* is most clearly on point for the first confession there was rendered inadmissible not because the trial court found it to be coerced, but because it was obtained in violation of the rule in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *Id.* at 1061. We found the appropriate inquiry to be "whether the conditions that rendered the earlier confessions inadmissible carried over to invalidate the subsequent one." *Id.* In addition to the nature of the primary violation, the particular criteria cited include the temporal proximity of the two confessions and the voluntary nature of the second confession. *Cf. Brown v. Illinois* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–2262, 45 L.Ed.2d 416, 427 (1975).

Applying these principles to the case at bar, we find that the evidence derived from the meetings between the IRS Special Agents and Jobin at the afternoon meeting on May 2 and on subsequent occasions

should not be suppressed. The evidence presented at the suppression hearing shows that the omissions in the warnings at the morning meeting were a result of a good faith, negligent failure on the part of Agent Cote. While the divergence from the requirements was substantial, there were no aggravating circumstances present. *See United States v. Maciel*, 351 F.Supp. 817 (D.R.I.1972) (Special Agent advised taxpayer against consulting an attorney). Further, although the afternoon meeting closely followed the misconduct of the morning interview, it occurred at a different place—the taxpayer's home—and followed a hiatus of several hours during which the taxpayer was undisturbed by IRS agents.

The final criterion, the voluntary nature of the defendant's statements, is a point of contention between the parties. The government emphasizes Jobin's cooperative attitude throughout the investigation. Appellee claims that he had been committed to an irreversible course of conduct at the defective morning interview: he had no practical choice but to continue cooperating with the IRS after receiving full warnings. While noting that Jobin was possibly under some psychological pressure, *cf. United States v. Bayer, supra*, 331 U.S. at 540, 67 S.Ct. at 1398, 91 L.Ed. at 1660, because of his substantial admissions at the morning meeting, we cannot find such pressure significant enough to be dispositive. *Id.* at 540–41, 67 S.Ct. at 1398, 91 L.Ed. at 1660.

Finally, we find that the principles underlying *Leahey*, promotion of uniform conduct on the part of IRS Agents and vindication of the taxpayer's right to rely on the published statements of the IRS, 434 F.2d at 10, would not be served by the exclusion of derived evidence in this case. These interests are adequately protected by suppression of the evidence gained at the morning meeting. Suppression of further evidence, despite the subsequent effort to warn Jobin fully of his rights, would serve no independent purpose.

■ The final question raised by appellant government is whether corporate records should be excluded as a sanction for non-compliance with the warning regulations. Some of the records obtained in the morning meeting were apparently those of Embassy Homes, Inc., the incorporated portion of Jobin's business. The warning regulations themselves are phrased in terms of a natural person, and are not designed to highlight any privilege possessed by a corporation. *See United States v. Sourapas, supra*, 515 F.2d at 299. More significantly, it is firmly established that the corporation has no Fifth Amendment right against self-incrimination and no corporate officer can prevent the disclosure of corporate records which may personally incriminate him. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *see Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Thus, the IRS could have obtained the corporate records through enforcement, 26 U.S.C. § 7604, of the summonses issued to Jobin if he had asserted his rights.

■ Appellee contends that the investigations into Embassy and Jobin were so intertwined as to compel exclusion of the corporation's records. The logic behind this argument is not compelling. On the contrary, it is the character of the records sought by the government, not the nature of the investigation, which controls the applicability of the Fifth Amendment privilege against self-incrimination. *See Wilson v. United States, supra*, 221 U.S. at 379, 385, 31 S.Ct. at 543–546, 55 L.Ed. at 778–781. Whatever confusion that existed over the status of the records as individual or corporate would have been resolved in a § 7604 enforcement proceeding. Nothing prevents the district court, either in a pre-trial hearing or upon a defense objection at trial from determining the nature of the records sought to be introduced into evidence. Therefore, exclusion of the corporate records is not necessary to insure the suppression of Jobin's personal records. We conclude that the district court erred in ordering the exclusion of the corporate records of Embassy Homes, Inc. *See United States v. Sourapas, supra; United States*

*v. Maciel, supra. Cf. United States v. Habig*, 474 F.2d 57 (7th Cir. 1973).

*Accordingly, we affirm the order of the District Court insofar as it suppresses statements and personal records of Jobin, made or turned over at the morning meeting on May 2, 1973. We reverse the order of the District Court in all other respects.*