**Raymond W. DeHERRERA, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4929.**

Supreme Court of Wyoming.

Jan. 26, 1979.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Henry F. Schlueter, Jr., and Larry G. Grubbs, Senior Law Students, Laramie, for appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, Richard H. Honaker, Asst. Atty. Gen., and Sandra K. Dunn, Legal Intern, Cheyenne, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE *, J., ret.

ROSE, Justice.

Appellant, Raymond W. DeHerrera, was charged with and tried upon three counts of burglary in violation of § 6–7–201, W.S. 1977.[1] The jury found the appellant guilty

---

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. Section 6–7–201, W.S.1977, provides:
   "Burglary.
   "(a) Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:
   "(i) Any building or dwelling; or
   "(ii) An enclosed railroad car; or
   "(iii) An enclosed portion of any automobile, vehicle, or aircraft; or

"(iv) A locked enclosed cargo portion of a truck or trailer; or
   "(v) A room within any of the above.
   "(b) Whoever violates subsection (a) under any of the following circumstances may be imprisoned not less than five (5) years nor more than fifty (50) years:
   "(i) While armed with a dangerous weapon; or
   "(ii) While unarmed, but arms himself with a dangerous weapon while still in the burglarized enclosure; or
   "(iii) While in the burglarized enclosure opens, or attempts to open, any depository by use of an explosive; or
   "(iv) While in the burglarized enclosure commits a battery upon a person lawfully therein.
   "(c) For the purpose of this section, entry into a place during the time when it is open to the general public is with consent."

upon all three counts, whereupon judgment was entered upon the verdict and he was sentenced to the Wyoming State Penitentiary for three concurrent terms of not less than seven nor more than twenty years.

The issues assigned for our consideration are two:

(1) Whether the appellant was arrested without probable cause by the Casper police, and, if we answer this question in the affirmative we are then asked to decide

(2) Whether the district court committed reversible error in admitting the defendant's confession as the fruit of an illegal arrest.

We will hold that there was probable cause for arrest and that the district court did not commit error in admitting the statement (confession) of the defendant.

### FACTS

In this case, the evidence revealed the following:

On the night of December 16, 1975, at about 9:30 p. m., Raymond DeHerrera and his brother-in-law, James Minchow, were returning home from Colorado. Minchow parked the car in a parking lot located near Russell's TV & Appliance, and proceeded to a nearby pay-telephone to make a call. Upon returning, Minchow and DeHerrera drove around and then went to the house where both were living. Minchow helped DeHerrera carry a base station and mobile unit C. B. radio from the automobile into the house, and, in response to inquiry, Minchow was informed by DeHerrera that they were from Russell's TV.

On that same night, at approximately 9:30 p. m., James Russell was working in his store when he heard a loud crash. Thinking it was something outside, he continued with his work. When he returned home, however, Russell was notified by police that his place of business had been broken into, and upon examining his inventory he discovered that a Cobra base radio and a Pearce-Simpson Cheatah mobile radio were missing.

In the early morning hours of June 17, 1976, Raymond DeHerrera, Gary Potter, Richard Church and Eugene Dobbins were driving in the vicinity of Stan's TV & Radio. Gary Potter, the driver, parked behind Stan's TV in the alley while Dobbins, at DeHerrera's request, got out and kicked the door a few times. Nothing happened, so they left, only to return several minutes later. On their return, Potter ran against the door, knocking it down. Again the four left. Parking an estimated one-half block away, DeHerrera and Richard Church went to Stan's TV, and when they returned to the car they were carrying several C. B. radios. These radios were then delivered to the Minchow home. The group then, for a second time, returned to Stan's TV.

At 8:00 a. m., June 17, 1976, William Goodwin, owner of Stan's TV discovered that his store had been burglarized and a considerable amount of merchandise was missing, consisting of several Royce and Midland C. B. radios.

Some time in July, 1976, appellant gave a Royce C. B. radio to Ronnie Ortega to sell, and one Dale Summers purchased the radio from Ortega with a check made out to DeHerrera. After purchasing the C. B. unit, Summers notified the police to pick it up.

On July 10, 1976, James Minchow was having a barbeque in his backyard and Raymond DeHerrera and Tommy Tucker were present. During the course of the party, Tucker and DeHerrera left, and the testimony at the trial was to the effect that during their absence they broke into Kistler's Tent & Awning, taking some flags and beer, and a transistor receiver and tuner.

### PROBABLE CAUSE

In the course of investigating these burglaries, and before going to the Minchow residence on July 13, 1976, where certain stolen items were discovered and the arrest effected, Officer Claxton and his fellow officer, Colling, were aware of the break-in at Stan's TV and the other business establishments, and they had specific knowledge

concerning the particular articles which had been stolen. Claxton had also received information as to where some of the stolen equipment could be found. Additionally, Claxton was informed of the transaction between Dale Summers and Ronnie Ortega, and of the check written to appellant Raymond DeHerrera in payment for the stolen radio.

Upon their arrival at the Minchow residence, Claxton and Colling observed one C. B. radio partially hidden under the couch, after which another radio was voluntarily produced for the officers by the appellant's sister. The radios matched the description of stolen items, whereupon Claxton and Colling took possession of the contraband and took the appellant to the police station.

At trial, an *in camera* hearing was held to determine whether the facts in Officer Claxton's possession were sufficient to constitute such probable cause as would authorize the arrest of DeHerrera. The trial court, in finding probable cause for arrest, denied a motion to suppress the confession made by appellant.

There is some argument between the parties about whether or not appellant was, in fact, under arrest when Officer Claxton asked the defendant to go with him to the police station. We will assume the position most favorable to the defendant in a probable-cause controversy, which is that he was under arrest. Having made this assumption, the only issue is whether or not there was such cause present as would, in law, authorize the officer to make the arrest.

We said in *Rodarte v. City of Riverton, Wyo.*, 552 P.2d 1245, 1252:

"Before an officer in Wyoming can make a legal warrantless arrest he must have probable cause to believe that a crime (as defined by statute) has been committed *by the person to be arrested* or he must have reasonable grounds to believe that an offense is being committed in his presence *by the person to be arrested. . . .*",

citing to § 7–12.3, W.S.1957, 1975 Cum. Supp. [now § 7–2–103, W.S.1977].[2]

We discussed in Rodarte what probable cause is in the criminal constitutional context and, with approval, quoted *Williams v. United States,* 10 Cir., 323 F.2d 90, 93 (Wyo. 1963), as follows:

" ' " "The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' * * * *Probable cause exists where 'the facts and circumstances within their* [the officers'] *knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.' " '* Citing *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879. [Emphasis supplied]" At 552 P.2d, page 1253.

We quoted from Mr. Justice Stewart as he delivered the opinion of the court in *Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), when he said:

" ' . . . Whether that arrest was constitutionally valid depends in turn upon whether, *at the moment the arrest was made, the officers had probable*

---

**2.** Section 7–12.3, W.S.1957, 1975 Cum.Supp. [now § 7–2–103, W.S.1977], provides:

"Arrests without warrant.—(a) A peace officer may arrest a person without a warrant and detain him until a legal warrant can be obtained when:

"(1) Any criminal offense is being committed in his presence by the person to be arrested; or

"(ii) He has reasonable grounds to believe that a felony, as defined by section 6–2 of the statutes has been committed and he has reasonable grounds for believing that the person to be arrested has committed it; or

"(iii) A misdemeanor, as defined by section 6–2 of the statutes has in fact been committed and the peace officer has reasonable grounds for believing that the person to be arrested has committed it and has reasonable grounds for believing that the person:

"(A) Will not be apprehended unless immediately arrested; or

"(B) May cause injury to himself or others or damage to property unless immediately arrested; or

"(C) May destroy or conceal evidence of the commission of such misdemeanor."

*cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879; . . .'* [Emphasis supplied]" [Underscoring added] At 552 P.2d, page 1253.

We have, then, adopted these standards against which to examine whether there exists probable cause for arrest in any given fact situation. With these tests for background, let us see whether the officers had probable cause to believe a crime had been committed so that Claxton's arrest of DeHerrera is justifiable. Did he, in other words—acting as a reasonable man—a prudent man—a man of reasonable caution—there and then have facts at hand which would give him probable cause to believe a crime had been committed? What did Officer Claxton see, hear, or know, when he invited the defendant to the police station, which would make him, as he acted in the manner imposed upon him by law, believe that, in all probability, a crime had been committed and that DeHerrera had committed it?

The crime under investigation was burglary (fn. 1, supra). At the very least, Officer Claxton knew the following things when he arrested DeHerrera: He knew that Russell's TV & Appliance Store had been robbed on December 16, 1975, and that a Cobra base radio and a Pearce-Simpson Cheatah radio had been stolen. He knew that on June 17, 1976, Stan's TV & Radio establishment had been burglarized and several C. B. radios taken and which had been described to him as Royce and Midland

C. B. radios. He knew that on July 10, 1976, Kistler's Tent and Awning was burglarized and some beer, flags, a transistor resistor and tuner were taken. Claxton had a detailed description of the stolen items at the time of the arrest. He also knew that DeHerrera had given one of the stolen radios to another person to sell for him and that the item was paid for by a check made payable to DeHerrera. Officer Claxton had been told[3] that the stolen property would be found where DeHerrera was living; and, when he went there, he did, in fact, find two of the radios which had been stolen.[4]

Our answer is that there can be no doubt that Officer Claxton had sufficient facts in his possession as would permit him, as a reasonable man—a prudent man—a man of caution—to believe that, in probability, the appellant had committed the crimes of burglary. He was, therefore, well within his rights in making the arrest of DeHerrera, and the district judge was correct in so holding.

## WAS THE CONFESSION IMPROPERLY ADMITTED?

The appellant urges that since the arrest was illegal, the confession, being a fruit of the poisonous tree, was improperly admitted. This argument is efficacious only if the predicate is valid, namely, that the arrest was illegal.

We have held that the arrest was *not* illegal and, therefore, the evidence in question was properly received, there being no contention that it was given involuntarily.

Affirmed.

THOMAS, J., filed a specially concurring opinion.

"... if the informant's statement is reasonably corroborated by other matters within the officer's knowledge. . . ."

3. An undisclosed informant's tip may be used by the officer to establish probable cause for arrest if the information is corroborated by other reliable information. *Spinelli v. United States,* 393 U.S. 410, 415, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We said in *Deeter v. State,* Wyo., 500 P.2d 68, 69 (1972), that hearsay evidence is admissible to support probable cause

4. Information obtained during an investigation, but prior to an arrest, may be used to justify an arrest on probable cause. *State v. Gunter,* 100 Ariz. 356, 414 P.2d 734 (1966); and *Robertson v. State,* 84 Nev. 559, 445 P.2d 352 (1968).

THOMAS, Justice, specially concurring.

I concur in the disposition of this case as reflected in the majority opinion. I would, however, invoke a different mode for the disposition of the arrest issue. I am persuaded by the remarks of Mr. Justice Stone that too often the judiciary follows the habit of ignoring legislation as a source of law upon which to build future precedent. Stone, "The Common Law in the United States," 50 Harv.L.Rev. 4 (1937).

In treating with legal problems, however, lawyers, judges and others who are interested have been taught to investigate the legislative as well as the judicial source for rules relating to the problem. In this instance there is a specific statute stating the legislative policy of the State of Wyoming with respect to situations in which an arrest can be made without a warrant. The particularly pertinent part of this statute reads as follows:

"(ii) He has reasonable grounds to believe that a felony, as defined by section 6–2 [§ 6–1–102] of the statutes has been committed and he has reasonable grounds for believing that the person to be arrested has committed it; or" Section 7–2–103(a)(ii), W.S.1977.

While it may be granted that this statute states nothing different from the historical concept of probable cause, it does represent at least a distillation of the myriad of judicial opinions relating to the problem. It may also represent a legislative choice of language to express that concept.

In such an instance the statute should be the point of departure for the court in dealing with the problem. The statutory expression of the rule is general and it is entitled to broader application than a rule developed in a prior judicial opinion which must be limited to substantially identical facts. As Justice Parker, speaking for the court, said in *Leet v. Joder,* 75 Wyo. 225, 235, 295 P.2d 733, 735 (1956):

"* * * [I]t will be well to bear in mind that analogies are helpful only insofar as they are applicable. In that respect, no decision determines the law, *except as it relates to the specific facts before the court."*

As the majority opinion demonstrates, in turning to judicial precedent we first must identify the rule; we then must hold it to the facts of this case; and then we apply it. The use of the statutory cornerstone is more efficient.

Our court did not deal with this subsection of the statute in *Rodarte v. City of Riverton, Wyo.,* 552 P.2d 1245 (1976). Neither did we treat with other aspects of the statute in a criminal context except by way of dicta. Using the statutory language as the point of departure, the holding of the instant case with respect to the arrest issue can be expressed succinctly. The police officers, given the factual background described in the court's opinion, had reasonable grounds to believe that a felony had been committed and reasonable grounds for believing that DeHerrera had committed it as required by the statute. This approach makes it unnecessary to develop the rule in our opinion before applying it. It also lends itself to an increased certainty on the part of those who must identify and apply the rule in future instances.