Roger A. NEILSON and John L. Pogliano, Appellants (Defendants below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 5073.

Supreme Court of Wyoming.

Aug. 23, 1979.
Rehearing Denied Sept. 17, 1979.

James H. Barrett of Trierweiler, Bayless, Barrett & McCartney, Cheyenne, for appellants.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., James W. Gusea, Asst. Atty. Gen., and Sandra K. Dunn, Legal Intern, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellants-defendants were tried jointly, and both were found guilty by a jury of the crime of grand larceny in violation of § 6–7–301, W.S.1977.[1] The amount stolen was $196.30. This appeal is from the judgment entered upon the verdicts.

Appellants contend that the trial court erred: (1) in denying appellants' pretrial motion to suppress as evidence certain items seized from an automobile and by allowing the subsequent introduction of these items into evidence at trial; (2) by instructing the jury relative to aiding and abetting the commission of a felony when such was not charged in the information; (3) by failing to instruct the jury as requested by appellants relative to the lesser included offense of petit larceny inasmuch as the stolen $196.30 was insufficient to provide $100.00 value for each appellant, and thus (according to appellants), at least one of them could not be guilty of grand larceny, and (still according to appellants) the jury should have been given the opportunity to so find or to find that each appellant stole less than $100.00; and (4) in denying appellants' motion for acquittal. Appellants also contend that the verdicts did not conform to the evidence and were not supported by it. This last contention and the contention relative to the denial of the motion for acquittal are predicated on the same reasoning as is the contention relative

---

1. Section 6–7–301 provides:

"Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of *the value of one hundred dollars ($100.00) or upwards*, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten (10) years." (Emphasis supplied.)

to failure to instruct on the lesser included offense.

We affirm inasmuch as we do not find reversible error.

In the early evening of September 19, 1978, Craig Robertson, an employee of the Ramada Inn in Laramie, encountered appellants in the first-floor hallway at the rear of the Ramada Inn building. They were then in the vicinity of a stairway and two soda vending machines. A third vending machine was located on the second floor near this stairway. A few seconds later, Robertson noticed appellants standing in the middle of the hall; and about five to eight minutes later, while walking in the back parking lot, he observed them leave by a back door of the building and enter a white over maroon Cadillac. One of them had one hand in the pocket of his coat with the other hand draped over the outside of the same pocket. There was a big bulge in that pocket. Robertson immediately reported his observations to the motel manager, Edward Agni.

Agni saw the Cadillac drive away from the Ramada Inn in the direction of the nearby Holiday Inn. He telephoned the Holiday Inn to alert its management that the drivers of the Cadillac were suspected of having stolen money from Ramada Inn's vending machines. He gave a description of the Cadillac. He then examined the vending machines on the first floor and found that they had been emptied of money. He verified the fact that the machines should have contained money by checking the motel records and by telephoning the local beverage dealer. He then called the police.

Officer Herderich was at the police station when the dispatcher received Agni's call. While Herderich and another police officer were proceeding to the Ramada Inn in response to the call, they received a radio message that the automobile in question had been at the Holiday Inn and was last seen heading south on Highway 287. Herderich drove south on Highway 287 and overtook a white over maroon Cadillac with Colorado license number SF 280 five miles south of Laramie. Since the vehicle answered the description of the automobile in question, he stopped it. Appellant Pogliano was the driver, and appellant Neilson was a passenger. Herderich displayed a weapon and ordered appellants to first place their hands on the windshield and then exit the automobile. Herderich then conducted a "pat down" search of each appellant, moved them to the back of the stopped vehicle, and placed them under the control of his companion officer. Herderich then made a search of the front of the passenger compartment for weapons. He found none, but he felt a bank bag under the front seat, which seemed to be full of coins. He did not then remove the bag. He separated appellants and advised each of them of the reason for the stop and of their "*Miranda* rights." He did not then handcuff appellants or advise them that they were under arrest.

As Herderich completed his search for weapons, Sergeant Puls arrived and took charge of the investigation. Herderich advised him of the bank bag located under the front seat. Puls then obtained consent from Pogliano to search the automobile.[2] Puls searched the front passenger compartment of the automobile and found and seized a tubular lockpick from the center of the front seat. Both appellants were then advised that they were under arrest, and they were handcuffed. Puls continued the search of the automobile and seized a blue notebook (containing some type of numeri-

---

2. When Puls first requested Pogliano's permission to search, he was asked if Pogliano was under arrest. Puls advised that he was not under arrest, and that the reason for the detention was to investigate the theft of money from some vending machines. Puls again sought a consent to search and Pogliano responded that the registered owner of the automobile might object. Puls advised that since Pogliano had control of the car, he could consent to a search thereof. Puls further advised that Pogliano had a constitutional right to require him to obtain a search warrant. Pogliano then stated, "Go ahead and look." At the time of this colloquy, no weapons were displayed by police officers. Pogliano admitted giving permission to search, but testified that he had no choice because of the cold weather and his poor health.

cal code), a paper cup (holding several rolls of coins and some loose coins), and the bank bag with contents from under the seat. It was later determined that the bank bag and the paper cup contained $183.80 and $12.50 in coins, respectively.

The Cadillac was towed to the city shops and impounded. It was not searched further until the next morning when Puls conducted a general search of the passenger compartment. Puls testified that he had decided not to obtain a search warrant for this search because he believed it was authorized by Pogliano's previous consent. As a result of this search, Puls seized several items, including a lock tumbler, another bank bag (containing assorted lockpicks and files and three sets of keys), coin wrappers, a cardboard box (containing a depth gauge, lock lubricants, and a number of gloves), and four quarters.

### ILLEGAL SEARCH AND SEIZURE

Before trial, appellants filed a motion under Rule 40(e), W.R.Cr.P., to suppress all items seized from the automobile in question as a result of these searches. Following a hearing, the trial court denied the motion. Over objection that they were obtained as a result of an illegal search and seizure, all of the items seized at the scene of the car stop were admitted into evidence at the trial. Of the items seized after the automobile had been impounded, the lockpicks, files, keys, depth gauge, and the four quarters were received in evidence over the same objection.

■■■ Before considering this contention of error, two aspects of the applicable procedural standards relative to this issue are noted. First, the trial court did not make findings on appellants' motion to suppress. When such findings are made, they are binding on this court unless clearly erroneous. *United States v. Jobin*, 1st Cir., 535 F.2d 154 (1976); *McDonald v. United States*, 10th Cir., 307 F.2d 272 (1962); see also 3 Wright, Federal Practice and Procedure: Criminal, § 678, p. 143. When such findings are not made, this court upholds the general ruling of the trial court if it is supportable by any reasonable view of the evidence. *Scarbeck v. United States*, 115 U.S.App.D.C. 135, 151, 317 F.2d 546, 562 (1963), cert. denied 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963); *United States v. Montos*, 5th Cir., 421 F.2d 215, 219, n. 1 (1970). Second, the validity of a search and seizure will be considered on the basis of evidence presented at both the hearing on the motions and the trial.

"In determining whether a trial court erred in admitting evidence claimed to have been illegally seized, an appellate court will usually not limit itself to the testimony received on the pretrial motion to suppress, but will also consider pertinent testimony given at the trial. * *" 3 Wright, Federal Practice and Procedure, supra, § 678, p. 143.

See *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790 (1925); *Rent v. United States*, 5th Cir., 209 F.2d 893, 896 (1954).

■■ The Fourth Amendment to the United States Constitution and Art. 1, § 4, of the Wyoming Constitution do not prohibit all warrantless searches and seizures, but only those that are unreasonable. Whether a search and seizure is unreasonable depends upon all the circumstances of each case. *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967).

■■ Automobiles are "effects" under the Fourth Amendment for the purpose of subjecting searches and seizures thereof to the constitutional standard of reasonableness. It is recognized, however, that there are differences between motor vehicles and other property, which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977); *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964); *Carroll v. United States*, supra, 45 S.Ct. at 284; *Alcala v. State*, Wyo., 487 P.2d 448, 453–454 (1971), cert. denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 446 (1972), reh. denied 406 U.S. 911,

92 S.Ct. 1613, 31 L.Ed.2d 823 (1972). In *United States v. Chadwick*, supra, 97 S.Ct. at 2484, the United States Supreme Court explained:

"Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-existent.' *Cady v. Dombrowski*, 413 U.S. 433, 441–442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); accord, *South Dakota v. Opperman, supra*, 428 U.S. [364], at 367, 96 S.Ct. [3092], at 3095 [49 L.Ed.2d 1000], see *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney, supra* [399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419]; *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)."

The Court concluded that the disparate treatment of automobiles rests in the diminished expectation of privacy involved in the use and regulation of automobiles.

The facts of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), are similar to those of this case, and the principles thereof are controlling in the disposition of the search and seizure issue of this case. It is proper therefore to refer to the *Chambers* case in detail. In *Chambers*, two teenagers noticed a blue compact station wagon containing four men circling the block in the vicinity of a Gulf service station. They saw it speeding away from a parking lot close to the station. About the same time, they learned that the station had been robbed. They reported their observations to the police, giving a description of the station wagon. Within an hour, the police stopped a blue compact station wagon containing four men. The occupants were arrested, and the automobile was driven to the police station where it was searched without a warrant. Instrumentalities and fruits of the crime found during the search were admitted into evidence. The Court held that there was probable cause to arrest the occupants of the station wagon and said:

"In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. The Court expressed its holding as follows:

" 'We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

" 'Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. * * * [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a com-

petent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. * * *

\* \* \* \* \* \*

" 'The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.' 267 U.S., at 153–154, 155–156, 45 S.Ct. at 285–286. "The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

" 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' 267 U.S., at 158–159, 45 S.Ct. at 287. "Finding that there was probable cause for the search and seizure at issue before it, the Court affirmed the convictions.

\* \* \* \* \* \*

"Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; ·moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for ·whatever period is necessary to obtain a warrant for the search.

\* \* \* \* \* \*

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warant [sic] is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. * * *" 90 S.Ct. at 1979–1981.

In a footnote to the *Chambers* case, the Court noted that in many cases the circumstances justifying an arrest are also those furnishing probable cause for the search. 90 S.Ct. at 1979, n. 6.

▇▇ As indicated, the case before us is similar in facts to those of the *Chambers* case, and the principles of the *Chambers* case are dispositive of the legality of the searches made at the scene of the automobile stop in this case.[3] Although a warrant-

---

**3.** The search made in the *Chambers* case at the police station was made in late night hours, it was made immediately after the automobile

was secured (see reference to "immediate search" in each of last two quoted paragraphs from *Chambers* case, supra), and a prior search

less search of an automobile may be legal without an arrest, the basis for the probable cause for such search may be the same as that for probable cause for an arrest without a warrant. Such is true in this case.[4]

■ A peace officer may arrest a person without a warrant if, at the moment the arrest is made, he has probable cause to believe that a crime had been committed by the person to be arrested, or he has reasonable grounds to believe that a crime is being committed in his presence by the person to be arrested. *DeHerrera v. State,* Wyo., 589 P.2d 845, 847 (1979); and *Rodarte v. City of Riverton, supra* at 1252.[5] Stated another way, the determination of probable cause to arrest without a warrant depends upon whether the facts and circumstances within the peace officer's knowledge and of which he has reasonably trustworthy information were sufficient to warrant a reasonably cautious or prudent man to believe that the person arrested has committed or is committing an offense. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949); and *Beck v. State of Ohio,* 379 U.S. 89, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The constitutional standard governing probable cause is grounded upon reasonableness. Thus, an appellate court's inquiry into whether or not an arrest is legal in a given case is restricted to an objective consideration of the evidence in the record.

■ Based upon the information communicated by the police dispatcher, Officer Herderich had sufficient knowledge—from reasonably trustworthy sources—to believe that the occupants of a white over maroon Cadillac were participants in the theft from the vending machines at Ramada Inn. This knowledge was well beyond mere suspicion. He knew that money had been stolen from machines; that the occupants of a white over maroon Cadillac were probably involved in the theft; that an automobile fitting this description had been seen leaving the Holiday Inn and heading south on Highway 287; that the automobile he stopped was a white over maroon Cadillac heading south on Highway 287; and that the time and place of the theft correlated with the time and place at which the Cadillac was stopped. The origin of this knowledge was trustworthy. It resulted from the observations and prompt investigations made by the two employees of the Ramada Inn, the further observations of the employees of the Holiday Inn, and his own observations. These facts support the reasonable conclusion that a crime had been committed and that the occupants of the white over maroon Cadillac had committed it. When

had not been conducted at the place it was stopped. None of these circumstances exist in this case. Since we will dispose of the effect of the search after impoundment of this automobile on other grounds, we will not determine the applicability of the principles of the *Chambers* case to it.

4. Although Officer Herderich testified at the pretrial hearing that he did not consider appellants to have been arrested at the time he read them their "*Miranda* rights" or prior thereto, and that he so informed them, and although Officer Puls testified that he told Pogliano he was not under arrest at the time permission to search was requested, the fact of arrest is not controlled by the subjective judgment of the police officers involved. *Rodarte v. City of Riverton,* Wyo., 552 P.2d 1245 (1976). Arrest was defined in the *Rodarte* case as follows at p. 1250:

"'An arrest is the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested.

"'To effect an arrest, there must be actual or constructive seizure or detention of the person arrested, or his voluntary submission to custody, and the restraint must be under real or pretended legal authority . . .' 5 Am. Jur.2d, Arrest § 1, p. 695."

Appellants were arrested when Herderich ordered them from the vehicle and moved them to the back of it. Weapons were there displayed, and both Herderich and Puls testified that appellants would have been physically restrained if they had attempted to leave or to enter the automobile. Such restraint under legal authority is an arrest.

5. The constitutional test of probable cause is essentially stated in § 7–2–103, W.S.1977, which authorizes warrantless arrests in certain circumstances.

Herderich stopped the automobile and took control of appellants, he had the requisite probable cause to make a warrantless arrest.

The same facts and logic reflect the existence of probable cause to search the automobile. The police had probable cause to believe not only that the occupants of the Cadillac were involved in the commission of the crime, but that the automobile was carrying the fruits of the crime and the instruments used to accomplish it. The latter conclusion is made even more credible by the close proximity in time between the commission of the crime and the arrest. Under these circumstances the search of the automobile at the place it was stopped was constitutionally valid under the *Chambers-Carroll* doctrine. See e. g., *United States v. Vento*, 3rd Cir., 533 F.2d 838 (1976); and *United States v. Miller*, 10th Cir., 460 F.2d 582 (1972).

Arguably, the logic of *Chambers* could also be applied to the search and seizure conducted the morning following the impoundment of the Cadillac. However, the circumstances are distinguishable.[6] *Chambers* apparently requires some justification for the removal of the automobile from the scene of the stop:

> "It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house." 90 S.Ct. at 1981, n. 10.

The fact that appellants were apprehended in the early evening hours may have rendered a careful search impractical and unsafe for the Laramie police officers. But in any event, the search was not promptly made after the automobile was taken to the city shops. It was delayed until the next morning.

Assuming the search the next morning at the city shops without first obtaining a search warrant was improper and that the items obtained therefrom were improperly admitted into evidence, the error was harmless beyond a reasonable doubt. *Campbell v. State*, Wyo., 589 P.2d 358, 367 (1979), citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Such items were merely cumulative to the other evidence. In the case before us, the evidence seized at the time the automobile was stopped and which was properly admitted into evidence consisted of the proceeds of the theft, a tubular lockpick, and a notebook. At the trial, the State, through an expert witness demonstrated to the jury how this lockpick could open a replica of the locking mechanism on the vending machines in question. He opined that the numbers entered in the notebook were coded numbers for a tubular type lock. The items obtained through the later search at the city shops were of a similar nature and were cumulative.

Earlier we noted the procedural standard for consideration of issues on appeal relative to motions to suppress when findings are not made by the trial court. With this standard in mind and from the record before us, we can say that appellants would have been convicted absent the evidence seized during the search of the automobile at the city shops. *Harvey v. State*, Wyo., 596 P.2d 1386 (1979), and *Pack v. State*, Wyo., 571 P.2d 241 (1977).[7]

## AIDING AND ABETTING INSTRUCTIONS

At the trial, defense counsel objected to the giving of two instructions on aiding and abetting on the ground that since aiding and abetting is a statutory crime distinct from grand larceny, the in-

---

**6.** See footnote 3, supra.

**7.** Our holding makes it unnecessary to further address the issue of the validity of the searches as incident to arrest or the issue of the validity of the searches as pursuant to consent of Pogliano and whether or not the consent was voluntary.

structions inserted a new element in the defense, against which they were not given an opportunity to defend. Appellants now argue that the giving of the instructions violated their right to due process of law.

Section 6–1–114, W.S.1977, provides, inter alia, that any person who aids or abets in the commission of any felony shall be deemed an accessory before the fact, and may be informed against, tried, and convicted in the same manner as if he were a principal.[8] One convicted as an accessory before the fact shall suffer the punishment and penalties prescribed by law for a person convicted of the crime involved. *Linn v. State*, Wyo., 505 P.2d 1270 (1973), cert. denied 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959 (1973). Rule 11(b), W.R.Cr.P., authorizes the joinder of two or more defendants in the same information if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense.

The record clearly demonstrates that appellants were jointly charged in the same information of committing grand larceny. The allegations in the information were sufficient to reasonably apprise them of the theory that they were being charged with having participated in a series of acts constituting an offense, and that they aided and abetted one another in the accomplishment and success of the venture. In addition, the information alleged that the coins found in "their" car were later counted and totaled $196.30. Appellants neither sought relief from prejudicial joinder nor filed a request to be furnished with a bill of particulars, setting forth the precise theory under which the State would prosecute the charge against them. In these circumstances, appellants were sufficiently apprised to permit a defense on all aspects of the crime charged, including that of aiding and abetting. Cf. *Borrego v. State*, Wyo., 423 P.2d 393 (1967).

---

**8.** Section 6–1–114 provides:

"Every person who shall aid or abet in the commission of any felony, or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed, shall be deemed an accessory before the fact, and may be indicted, informed against, tried and

## LESSER INCLUDED OFFENSE INSTRUCTIONS

■ Appellants contend that they were entitled to two instructions covering the lesser offense of petit larceny, as defined in § 6–7–302, W.S.1977. Specifically, they argue that since the total amount of money taken in and recovered from the theft was less than $200.00, the jury should have been instructed that either or both of them could have stolen less than $100.00 and thus could have been guilty of the lesser offense of petit larceny. Appellants do not cite any authority that compels such a result.

It has long been the law that:

"Where several persons accused participated in a larceny, if the aggregate value of the goods taken by them at the same time and place exceeds the statutory amount, the crime is grand larceny, although the part taken by each accused or the share which each, after a division, would have received, is less than that amount. * * * " 52A C.J.S. Larceny § 60(3)c, pp. 493–494.

In any event, appellants' contention is based upon the assumption that the jury could not have been instructed that, as an aider and abettor, an accomplice is chargeable as a principal. Our disposal of that question also controls this issue.

When the evidence shows that the accused is either guilty or not guilty of the higher grade of the offense, the trial court is not required to instruct on the lesser offense. *Jones v. State*, Wyo., 580 P.2d 1150, 1152 (1978); *Richmond v. State*, Wyo., 554 P.2d 1217, 1232 (1976), reh. denied 558 P.2d 509 (1977). This rule applies to larceny cases. *Oldham v. State*, Wyo., 534 P.2d 107, 109 (1975).

■ Appellants also assign errors to the trial court's denial of their motion for judg-

convicted in the same manner as if he were a principal, and either before or after the principal offender is convicted or indicted or informed against; and upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

ment of acquittal at the close of the State's case and to the sufficiency of the evidence to support the jury's verdicts. These arguments essentially restate the proposition that both of them cannot be convicted of grand larceny when the evidence and the verdict forms indicated that the amount stolen was less than $200.00. For reasons previously stated, these arguments are specious.[9] In reviewing the sufficiency of the evidence to support a verdict of guilty, this court adheres to the time-honored rule that we will not weigh conflicting evidence nor give consideration to the credibility of the witnesses. We must view the evidence in a light most favorable to the prosecution and determine the question of law as to whether there is direct or circumstantial evidence, together with the reasonable inferences that may be drawn therefrom, which will sustain the verdict. *Collins v. State*, Wyo., 589 P.2d 1283, 1291–1292 (1979); and *Repkie v. State*, Wyo., 583 P.2d 1272, 1273–1274 (1978). We hold that the evidence here was sufficient as a matter of law to support the jury's verdicts.

Affirmed.

ROSE, Justice, specially concurring.

*Search Next Day Justified by Carroll-Chambers*[1]

The author of the court's opinion, adverts to but does not resolve the issue of whether the search of the car the following morning was within the *Carroll-Chambers* doctrine. The opinion avoids this issue by holding that *even if* the search the following morning was unjustified, introduction of the fruits of the morning search was harmless

error because the evidence was merely cumulative. I will consider this contention, but before doing so will discuss the issue of whether the morning search was within the *Carroll-Chambers* doctrine.

The relevant United States Supreme Court cases are:

(1) *Chambers*, supra footnote 1—police stopped auto, arrested occupants and took auto to police station where it was searched without a warrant "some time after the arrest."[2] 399 U.S. at 47, 90 S.Ct. at 1979. Search *upheld.*

(2) *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. den. 92 S.Ct. 26, 404 U.S. 874, 30 L.Ed.2d 120—police first questioned defendant on January 28, 1964, about a murder; on February 19, defendant was arrested and defendant's car towed from his driveway to the police station without a valid warrant (403 U.S. at 453, 91 S.Ct. at 2032); and "on February 21, two days after it was seized, again a year later, in January 1965, and a third time in April 1965," it was searched. 403 U.S. at 448, 91 S.Ct. at 2028. Search held *invalid.* In *Coolidge*, there was no majority opinion with respect to the validity of the warrantless auto search. Four Justices distinguished *Chambers* from the *Coolidge* case because (a) in *Chambers* " 'exigent circumstances' " justify the warrantless search of " 'an automobile stopped on the highway.' " (Court's emphasis) 403 U.S. at 460, 91 S.Ct. at 2035. (b) The *Coolidge* defendant had been cooperating with the police for some time and thus the opportunity to search his car was not "fleeting." 403 U.S. 460, 91 S.Ct. at 2035. (c) Coolidge

---

**9.** The record reveals that after the close of the State's case, appellants introduced evidence without renewing their motion for judgment of acquittal at the close of all the evidence. Since the introduction of evidence by a defendant after his motion was denied has been held to be a waiver of that motion, an appellate court cannot review the sufficiency of the evidence except for plain error. 2 Wright, Federal Practice and Procedure: Criminal, § 463, p. 246. Appellants, however, did make a motion for judgment of acquittal within ten days after the jury was discharged. See Rule 30(c), W.R. Cr.P. Thus, for purposes of our review, only

the question of the sufficiency of the evidence to sustain the jury verdicts is properly before this court.

**1.** *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94.

**2.** I am unable to find support in the *Chambers* opinion for the majority's statement in footnote 3 that the search in *Chambers* was made "immediately after the automobile was secured."

was arrested in his house and his wife also went with the police, leaving no other adult occupants of the house who could tamper with the car. (d) And the police, in *Coolidge*, were already guarding the house; therefore, there would have been no extra inconvenience to the police in guarding the vehicle while awaiting a warrant. The four-man opinion contains this language:

"Since *Carroll* would not have justified a warrantless search of the Pontiac at the time Coolidge was arrested, the later search at the station house was plainly illegal, at least so far as the automobile exception is concerned. *Chambers, supra,* is of no help to the State, since that case held only that, where the police may stop and search an automobile under *Carroll,* they may also seize it and search it later at the police station. . . ." 403 U.S. at 463, 91 S.Ct. at 2036

". . . The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified. . . ." (Court's emphasis) 403 U.S. at 463, 91 S.Ct. at 2036, fn. 20.

(3) *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974)—Several weeks after defendant had first become a suspect, he accepted an invitation to appear at the police station, where he was arrested with an arrest warrant. Upon the arrest, Lewis' car keys and the parking lot claim check were released to the police. A tow truck was dispatched to remove the car from the parking lot to the police impoundment lot, where a warrantless search was conducted *the next day.* Search *upheld.* The search consisted of removing foreign paint from the car and taking tire impressions. The four-man *Cardwell* court opinion upheld the search because of (a) the *Carroll-Chambers* line of decisions based on exigent circumstances, (b) the lesser intrusion of searching an auto rather than a house, and (c) the lesser expectation of privacy of paint scrapings and tire impressions.

The *Cardwell* Court distinguished *Coolidge* :

". . . Since the Coolidge car was parked on the defendant's driveway, the seizure of that automobile required an entry upon private property. Here, as in *Chambers* [citation omitted], the automobile was seized from a public place where access was not meaningfully restricted. This is, in fact, the ground upon which the *Coolidge* plurality opinion distinguished *Chambers* [citation omitted] . . . ." 417 U.S. at 593, 94 S.Ct. at 2471.

The *Cardwell* Court also said:

"Respondent contends that here, unlike *Chambers,* probable cause to search the car existed for some time prior to arrest and that, therefore, there were no exigent circumstances. Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. . . ." 417 U.S. at 595, 94 S.Ct. at 2472.

(4) *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), reh. den. 423 U.S. 1081, 96 S.Ct. 869, 47 L.Ed.2d 91— *Upheld search* (per curiam) of car at police station within an hour after it was seized in broad daylight, despite claim that the car could have been safely searched on the spot.

The author of this court's opinion in the instant case, in footnote 3, distinguishes the *Chambers* search from the search the next day in our case. In light of the above four cases, I do not consider the distinctions controlling. See, also, my footnote 2, supra. I think the search the next day falls on the *Chambers* rather than the *Coolidge* side of the line, and would have disposed of the morning-search question by holding it valid under *Chambers,* rather than the cumula-

tive-evidence, harmless-error rule—as does the court's opinion.

### The Harmless-Error Argument

As mentioned previously, the court's opinion assumes, arguendo, that the search the next day was improper but that the introduction at the trial of the fruits of that search was harmless error, citing *Campbell v. State*, Wyo., 589 P.2d 358 (1979). As United States Supreme Court authority for the harmless-error rule, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is cited—a case in which the error was not found to be harmless.

The rule that a defendant has a right to be tried by a jury under a guilty-beyond-a-reasonable-doubt standard occupies a paramount place in my hierarchy of values. I feel that supreme court justices are on firmer ground interpreting caselaw than trying to ascertain whether the jury would have convicted the defendant under different evidence. To say that it is harmless error to introduce incriminating evidence not properly before the jury is a dangerous threat to the right to jury trial and to the guilty-beyond-a-reasonable-doubt standard.

The harmless-error rule should be invoked sparingly and under carefully defined circumstances. It should not be used to avoid analyzing the relevant caselaw.

In this case, I am of the opinion that the next-day search of the auto falls pretty clearly within the *Carroll-Chambers* doctrine and I contend that the issue should have been resolved on that ground. I do not consider it too risky to extend the *Carroll-Chambers* doctrine to searches which occur more than a few hours after the seizure of the automobile because this danger is sufficiently protected by the "exigent-circumstances" test at the time of the vehicle stop—not at the time of the search.